(No. 5166.  July 15, 1929.)

J. S. KEEL, Respondent, v. N. M. VINYARD and SUSIE VINYARD, Husband and Wife, Appellants, and W. A. MALLOY and MAE E. MALLOY, Husband and Wife, Defendants.

[279 Pac. 420.]

E. D. Reynolds, for Appellants.

Bothwell & Chapman, for Respondent.

VARIAN, J.—In an action brought against W. A. Malloy and wife to foreclose a mortgage on certain real estate situate in Jerome county, respondent (plaintiff) obtained a decree of foreclosure and sale, entered October 2, 1925. The property was duly advertised and sold by the sheriff, to plaintiff, for the sum of $2,270.07, who issued to him the usual certificate of sale on October 30, 1925. On October 27, 1926, Malloy and wife by quitclaim deed conveyed their interest in the property foreclosed to appellant N. M. Vinyard, which was placed of record on October 30, 1926, one year after the date of the sheriff's certificate of sale. At the time of the foreclosure sale, there were two prior mortgage liens against the property, a mortgage to The Federal Land Bank of Spokane securing payment of the sum of $6,000 and interest, and a mortgage to C. H. Kolling to secure the payment of $971.30 and interest, each of said mortgages having been executed by Malloy and wife prior to the execution of the mortgage under which the property was foreclosed as aforesaid. Each of said prior mortgages was subject to foreclosure, for nonpayment of amortization instalments in the case of The Federal Land Bank mortgage, and the failure to pay interest instalments in the case of the Kolling mortgage. Three interest and amortization instalments of the Federal Land Bank mortgage, falling due after foreclosure commenced, were paid by Keel as follows: October 30, 1925,

$215; February 13, 1926, $211.40; and July 6, 1926, $210. Malloy defaulted in these payments, and each was paid by plaintiff herein upon the said mortgagee threatening to foreclose said first lien upon the property so bid in by him at foreclosure sale. Malloy also defaulted in the payment of $39.62, interest due on the Kolling mortgage, falling due on February 13, 1926, which plaintiff also paid under threat of· foreclosure.

On November 1, 1926, said defendant paid to the sheriff the amount the property sold for at the foreclosure sale, less certain credits deductible on account of rentals collected by the receiver of the property pending redemption, plus ten per cent of said net amount. The sheriff accepted the amount ($2,497.08) as that required to redeem, and issued his certificate of redemption to Vinyard, which amount was accepted by Keel from the sheriff under protest that it did not include the several sums he had paid out in protecting the title on account of the amortization instalments of The Federal Land Bank mortgage and the interest instalment on the Kolling mortgage. On November 15, 1926, plaintiff commenced this action against Malloy and wife and Vinyard and wife, claiming an equitable lien against the property redeemed. The defendants moved for a judgment of nonsuit at the close of the plaintiff's case, and did not put on any evidence. The court held with the plaintiff, declared an equitable lien against the property, and decreed foreclosure and sale thereof, without personal judgment against any of the defendants.

The first error assigned is that the court erred in finding that plaintiff accepted the payment from the sheriff of the sum of $2,497.08 under protest. The evidence is sufficient to sustain the finding complained of.

The remaining assignments of error go to the granting of any relief here, it being contended that plaintiff was entitled to a personal judgment against Malloy only.

The judgment lien was extinguished by the foreclosure sale, and the purchaser (plaintiff) at that sale acquired title to· the property subject to prior liens and the

right of redemption. (C. S., sec. 6930.) The effect of the foreclosure sale was that the grantee of the mortgagors lost, and the purchaser acquired, title to the land, subject to the purchaser's title being divested and restored to the mortgagors or their grantee (Vinyard) by redemption within one year after the date of sale. (*Steinour v. Oakley State Bank,* 45 Ida. 472, 262 Pac. 1052.) Keel received a qualified legal title to the land, subject to the prior mortgage liens of The Federal Land Bank of Spokane and Kolling, subject to the right of redemption as aforesaid, and likewise subject to the right of the Malloys, or their successor in interest, to remain in possession until such time as the sheriff's deed be issued to Keel. (*Bateman v. Kellogg,* 59 Cal. App. 464, 211 Pac. 46.) In order to preserve the title to the property and protect it for the benefit of himself and the redemptioner, Keel was compelled to pay, and under threat of foreclosure paid, the past-due amortization instalments of The Federal Land Bank of Spokane mortgage and the past-due interest under the Kolling second mortgage. He could not protect his interest in the property without likewise protecting Malloy's interest and that of his successor, Vinyard.

At the time the payments in controversy were made, Keel owned an interest in the land, and was authorized to redeem it from the prior mortgage liens after the claims thereof were due. True, he did not take up these liens *in toto,* but by failing to pay the several instalments as they became due, the mortgagors rendered both mortgages subject to immediate foreclosure proceedings to collect the full amount of the several loans thereby secured. They became due and payable upon election of the mortgagees. By paying these instalments, foreclosure of the prior mortgages was prevented and the title preserved.

It is apparent that the redemption statutes, C. S., secs. 6933, 6934, and 6935, do not contemplate the inclusion of payments of the character of those made by Keel in computing the amount necessary to redeem the land from foreclosure sale. They do provide for the inclusion of assessments and

taxes paid by the purchaser, and in case the purchaser is also a creditor having a lien prior to that of the redemptioner, other than that of the judgment under which such purchase was made, the amount of such lien, with interest thereon. Keel's payments on account of the prior mortgages are not "taxes or assessments" in contemplation of the provisions of said statutes, nor do they constitute a "prior lien" in the sense referred to in C. S., sec. 6933. Therefore, the remedy here, if any, must be found in the principles of equity, and not in the redemption statutes. No obligation rests upon Vinyard, grantee of the mortgagors, to repay Keel the amounts expended by him in protecting the title to the property.

The situation presented is somewhat analogous to that arising upon redemption by one of several tenants in common, who pays the entire sum necessary to accomplish a redemption. The effect of such redemption is that the judgment of foreclosure is wiped out, and the title rests, as before the mortgage foreclosure sale, in the mortgagor tenants in common (or their successors in interest). The tenant in common redeeming from such sale has an equitable lien upon the interests of his cotenants in the property for the share of each owner so paid by him. (*Calkins v. Steinbach*, 66 Cal. 117, 4 Pac. 1103; *Warner Bros. Co. v. Freud*, 138 Cal. 651, 72 Pac. 345.) It was held in these cases that the redemptioner did not succeed to the title of his co-owners by virtue of his payment of their proportion of the redemption charge, but said payment entitled him to an equitable lien on their interests, which must be judicially determined.

Again, in cases involving the payment of life insurance premiums by one not under obligation to do so, the rule stated by Pomeroy in his work on Equity Jurisprudence, 4th ed., vol. 3, has been generally sustained. It is stated thus:

"Sec. 1243. Where a person, not being owner of a policy of life insurance, nor bound to pay the premium, but having some claim or color of interest in it, voluntarily pays the premiums thereon, and thus keeps it alive for the benefit of

a third party, he may thereby acquire an equitable lien on the proceeds. of the policy as security for the repayment of his advances.''

This principle is frequently followed by the courts in sustaining the right to recover for premiums paid by an assignee of the policy in cases where the assignment is determined to be void or invalid. (*Unity Mutual Life Assur. Assn. v. Dugan,* 118 Mass. 219; *Harley v. Heist,* 86 Ind. 196, 44 Am. Rep. 285; *Matlack v. Seventh Nat. Bank,* 180 Pa. St. 360, 36 Atl. 1082; *Connecticut Mutual Life Ins. Co. v. Burroughs,* 34 Conn. 305, 91 Am. Dec. 725; *Scobey v. Waters,* 10 Lea (Tenn.), 551; *Brick v. Campbell,* 122 N. Y. 337, 25 N. E. 493, 10 L. R. A. 259; *Morgan v. Mutual Benefit Life Ins. Co.,* 132 App. Div. 455, 116 N. Y. Supp. 989; *Stevens v. Germania Life Ins. Co.,* 26 Tex. Civ. App. 156, 62 S. W. 824.) In England the rule seems to obtain also. (*Norris v. Caledonian Ins. Co.,* L. R. 8 Eq. 127; *Gill v. Downing,* L. R. 17 Eq. 316; *Todd v. Moorhouse,* L. R. 19 Eq. 69; *West v. Reid,* 2 Hare, 249, 67 Eng. Reprint, 104.)

In the California case of *Stockwell v. Mutual Life Ins. Co.,* 140 Cal. 198, 98 Am. St. 25, 73 Pac. 833, the respondent, one of five children named as beneficiaries in a policy insuring the life of their father, paid the annual premiums on said policy for many years prior to insured's death. There was no agreement, either with insured or the other beneficiaries, that she was to pay the premiums, nor was the policy assigned to her. Upon the death of the father, it was contended by the other beneficiaries that the premium payments made by respondent were voluntary, and therefore could not be recovered by her. In sustaining a judgment to the effect that such payments might be recovered with interest, the appellate court said:

''There is a class of equitable rights and liabilities which at law are referred to the fiction of 'implied contracts,' but which arise wholly from considerations of right and justice, which lie at the foundation of equity jurisprudence, and which really exist *ex aequo et bono.* The relation of these beneficiaries to each other, in reference to the policy

of insurance, after the death of their mother, was analogous to that of tenants in common in a parcel of real estate. It would not be questioned that one of them might make such reasonable repairs to the building as were necessary for its preservation, and charge the expense thereof upon the property, to be equally borne by the tenants in common. This right does not depend upon contract, but an equitable lien is created upon the property as security for its repayment.''

While we have been cited to no cases where the purchaser at foreclosure sale has been compelled, in order to protect the title to the property, to pay interest, or instalments falling due, under prior mortgages, after the commencement of foreclosure proceedings under a junior mortgage and before the time for redemption has expired, we hold the rule announced in the foregoing cases applies to the situation here. Respondent could not include the amounts so paid in protecting the title to the property in the amount necessary to redeem from foreclosure sale. He was not in possession of the property nor entitled to its possession. He was compelled to pay the amounts falling due under the prior mortgages in order to protect the title, not knowing whether it would inure to his own benefit as ultimate owner or to the benefit of one redeeming from the sale. His interest could not be segregated from redemptioner's interest, and in protecting the title for himself he preserved it for the redemptioner. Having acted with due diligence in asserting his claim, we think respondent entitled to an equitable lien upon the property redeemed, to the extent of the amounts paid by him, with interest from date of payment, said lien to be subject only to the liens prior to that of the mortgage foreclosed, and that he be entitled to a decree of foreclosure and sale, all as decreed by the trial court.

Finding no error in the record, the judgment is affirmed. Costs to respondent.

Budge, C. J., and Givens, T. Bailey Lee and Wm. E. Lee, JJ., concur.