[No. 34251. Department Two. December 5, 1957.]

EVERETT P. NELSON, *Respondent*, v. EINER H. SPONBERG *et al.*, *Appellants.*[1]

[1]Reported in 318 P. (2d) 951.

Ralph M. Rogers, for appellants.

Lycette, Diamond & Sylvester and Frank H. Roberts, Jr., for respondent.

ROSELLINI, J.—The plaintiff, a doctor, owns and maintains his offices in a building in Tacoma consisting of a main floor and basement. At the rear of this building is an outside stairway, leading to the basement. There is another stairway at the front of the building, leading to the doctors' offices. The rear stairway is forty-eight inches in width, of concrete construction, with walls on either side. In January, 1953, the plaintiff, acting through his agent, the caretaker, engaged the defendant Einer Sponberg, a welder (hereafter referred to as the defendant), to install an iron-pipe handrail down the outside wall, the handrail to be an extension of an iron rail which then existed around the top of the stair well. The designing of the handrail was left to the defendant's discretion.

The defendant visited the premises and examined the stairway. He looked through the door, which was opposite the wall on which the handrail was to be installed, and observed that the entrance led to what appeared to be a utility room or hallway. He decided not to extend the handrail the full length of the stairway but to terminate it on the second step from the bottom, in order to allow clearance space for moving large objects in and out of the basement. The handrail was completed in February, 1953, and was accepted, as installed, without complaint.

On January 22, 1954, a Mrs. Fay Cress, a patient of one of the two doctors who maintained their offices in the basement, was directed by a nurse to use the back stairway to reach a restroom on the first floor of the building. In returning down the back steps and while stepping from the last step to the base of the stair well, Mrs. Cress slipped and fell, fracturing her ankle. She sued the plaintiff for her injuries, alleging that he was negligent in failing to provide a proper handrail, as required by city ordinance. The plaintiff settled this action for four thousand dollars, and on May 28, 1956, brought suit against the defendant, alleging, as a first cause of action, that the defendant had breached express and implied warranties that the handrail would conform to the city's building requirements and also, as a second cause of action, claiming indemnity on the ground that the injuries were due to the defendant's primary negligence. The answer consisted of a general denial and an affirmative allegation that the action was barred by the statute of limitations.

The action was tried to the court, which found that the defendant had impliedly warranted that he would install the handrail in compliance with the building code of the city of Tacoma; that the handrail was defective in this regard, in that it did not extend the full length of the stairway; that had the handrail extended to the end of the stairway, Mrs. Cress could have "taken hold of it." The court further found that the negligence of the defendant was primary and active, whereas that of the plaintiff was passive, consisting of a failure to inspect; that the defense of the Cress action had been tendered to the defendant and had been refused, and that the settlement made by the plaintiff was reasonable and prudent. The conclusion based upon these findings was that the plaintiff was entitled to be indemnified by the defendant for the payment made to Mrs. Cress under the settlement and the attorney's fees and costs incurred in that suit.

It is urged on appeal that, in so far as this action is based upon a breach of implied warranty, the trial court should have held that, if there was such a warranty, any

recovery for its breach was barred by the statute of limitations. In disposing of this contention, the trial court evidently supposed that the claim for breach of the alleged warranty was governed by the rule applicable in indemnity actions, that the cause of action accrues when the indemnitee is forced to pay a claim which should have been paid by the indemnitor. See *Earley v. Rooney*, 49 Wn. (2d) 222, 299 P. (2d) 209. In this, the trial court was in error. An action upon an oral warranty as to kind or quality, whether express or implied, must be brought within three years after the goods are delivered unless it relates to a future event. *Ingalls v. Angell*, 76 Wash. 692, 137 Pac. 309. Here, the alleged warranty pertained to the quality of the handrail when it was installed, which was sometime in February, 1953. This action was not commenced until May 28, 1956, more than three years after the breach occurred. The defense of the statute of limitations was properly raised by answer, and the first cause of action should have been dismissed.

If, however, the negligence of the defendant in failing to construct a handrail according to the requirements of the building code was a proximate cause of the injuries to Mrs. Cress, and if the court was correct in finding that the plaintiff was not guilty of active negligence, the judgment may be sustained on that ground.

In *Rufener v. Scott*, 46 Wn. (2d) 240, 280 P. (2d) 253, in discussing the rule that generally there is no right of indemnity between joint tort-feasors, we recognized the exception stated in 27 Am. Jur. 467:

"But the operation of this rule against recourse is greatly circumscribed, with the result that one constructively liable for a tort is generally held entitled to indemnity from the actual wrongdoer, regardless of whether liability is imposed on the person seeking indemnity by statute or by rule of the common law, and irrespective of the existence of an express contract to indemnify. Accordingly, it has been stated that a person who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter, whether contractual relations exist between them or not. In this connection it has been observed

that where one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage, the rule denying contribution or indemnity between joint tort-feasors does not apply, the parties not being in pari delicto as to each other, though either may be held liable as to third persons."

Of course, before recovery can be had against the indemnitor, it must be shown that his negligence was the cause of the injuries or damage for which the indemnitee was compelled to pay.

When asked what relationship, if any, the handrail had with her fall, Mrs. Cress replied: "Well, I don't believe I know how to answer that. I slipped on the step."

She was then asked whether she attempted to catch herself and prevent herself from falling. She answered that she automatically reached out, but there wasn't anything "there" to grasp or stop her fall. The record does not disclose in what direction she reached, but it is apparent from her testimony that she did not reach in the direction of the handrail installed by the defendant, because she then stated that she did not notice whether that handrail extended all the way down to the bottom step. She was asked if she could have grasped a handrail, had there been one at the place of her fall; and she answered, "Well, yes, I think I could have."

There is in this testimony nothing on which to base a finding that the defect in the handrail was a proximate cause of Mrs. Cress' fall, and the trial court recognized that the most it could find from the evidence was that, if the handrail had been there, she could have taken hold of it. As a matter of fact, Mrs. Cress was facing the left wall of the stair well when the accident occurred, with her back to the handrail, and it is likely that, when she spoke of a handrail at the place of her fall, she was referring to the left wall rather than the right. At any rate, upon this evidence, it is a matter of speculation whether Mrs. Cress *would* have taken hold of the handrail on the right side of the stair well (behind her), and whether, if she had done so, her fall would have been prevented.

The trial court recognized the insufficiency of the evidence to establish proximate cause, but concluded that it was not necessary for the plaintiff to establish the fact that the injuries were caused by the negligence of the defendant, since a good faith settlement had been made. The respondent, in support of this conclusion, cites two cases: *Luton Mining Co. v. Louisville & Nashville R. Co.,* 276 Ky. 321, 123 S. W. (2d) 1055; and *Chicago, R. I. & P. R. Co. v. Dobry Flour Mills,* 211 F. (2d) 785. The court in the first case held that, where the indemnitor denied liability under its contract, the indemnitee was justified in making a settlement, and the only question was whether it had acted in good faith. In determining whether the indemnitee had acted in good faith, however, the court undertook a lengthy discussion of the probable liability of both the indemnitee and the indemnitor and concluded that the possibility of a verdict in favor of the indemnitee was very slight and that, in making the payment, the indemnitee was not a volunteer.

In the second case cited, the court recognized the general rule that a mere volunteer in the payment of such a claim cannot successfully maintain an action against another, claimed by such volunteer to be the one liable for the payment, and cited, among other cases, *Oregon-Washington R. & Nav. Co. v. Washington Tire & Rubber Co.,* 126 Wash. 565, 219 Pac. 9, as authority for that rule. The court held, however, that under the Oklahoma statute, it was not necessary to prove liability where a settlement was made in good faith after notice to the indemnitor.

As recognized in that case, Washington is with the majority of courts which hold that an indemnitee who seeks reimbursement from his indemnitor for a payment made by him in discharge of a claim indemnified against is not bound to submit to suit before paying the claim; but if he pays without such suit, as a condition of recovery from his indemnitor, he is under the necessity of proving that he was liable for the amount thus paid. *Oregon-Washington R. & Nav. Co. v. Washington Tire & Rubber Co., supra; Carpenter Paper Co. v. Kellogg,* 114 Cal. App. (2d) 640, 251

P. (2d) 40; *Dunn v. Uvalde Asphalt Paving Co.,* 175 N. Y. 214, 67 N. E. 439; *Tugboat Indian Co. v. A/S Ivarans Rederi,* 334 Penn. 15, 5 A. (2d) 153; 42 C. J. S. 603, § 25.

■ Furthermore, even though the liability of the indemnitee has been determined in a suit against him by the claimant, unless the responsibility of the indemnitor was at issue in that suit and the indemnitor was given notice, it is still incumbent upon the indemnitee, in a suit against the indemnitor, to show that his acts were the cause of the damage. *Seattle v. John C. Regan & Co.,* 52 Wash. 262, 100 Pac. 731.

Since the evidence of the plaintiff was insufficient to show a causal relationship between the injuries of Mrs. Cress and the condition of the handrail, it is unnecessary to decide whether his negligence in maintaining the premises with the defective handrail was active, rather than passive, and precluded recovery of contribution from the defendant.

The judgment is reversed and the action dismissed.

HILL, C. J., DONWORTH, OTT, and FOSTER, JJ., concur.