442 P.2d 178

Richard C. WILLIAMS, Plaintiff,

v.

George JOHNSTON and Blanche Johnston, husband and wife, Defendants-Respondents,

v.

ZAMZOW'S, a corporation, dba Kuna Mills; and Liquefied Vangas, Inc., a corporation, Defendants-Appellants.

No. 9943.

Supreme Court of Idaho.

June 17, 1968.

Elam, Burke, Jeppesen & Evans, Moffatt, Thomas, Barrett & Blanton, Boise, for appellants.

C. Ben Martin, Boise, for respondents.

McFADDEN, Justice.

Richard C. Williams, the plaintiff, was involved in a motor vehicle accident on July 14, 1964, in which he suffered personal injuries and property damage for which he sought recovery in this action. Williams, in his complaint, alleged independent negligence on the part of each of the defendants, i. e., George and Blanche Johnston (respondents herein), Liquefied Vangas, Inc., and Zamzow's, Inc. (appellants herein).

The accident occurred when Williams was driving along a highway near Kuna, Idaho. As Williams' vehicle and the Johnston vehicle were passing each other, a weed-burning trailer-rig, being towed by the Johnston vehicle, broke loose from the trailer hitch and struck the Williams vehicle. In his complaint, Williams alleged negligence on the part of the Johnstons for failing to properly attach the weed-burning trailer-rig to their vehicle, failing to stop and make necessary repairs when the trailer hitch became loosened and for failing to maintain proper safety precautions while using the public road. Williams charged appellants Zamzow's and Liquefied Vangas, Inc., independently with negligence in renting out the weed-burning equipment which was not adequately equipped to remain hitched to Johnstons' vehicle, and in failing to give adequate instructions to the Johnstons as to its operation and attachments to towing vehicles. Zamzow's, Inc., had rented the trailer, which was owned by Liquefied Vangas, Inc., to the Johnstons.

The Johnstons tendered to both appellants a request for defense of Williams' action against them and cross-claimed against appellants for indemnity and judgment over when the request was refused.

Zamzow's and Liquefied Vangas, Inc., in turn, each tendered to the Johnstons a request for defense of the Williams' action against them individually, and each cross-claimed against the Johnstons for indemnity for costs and attorneys fees and judgment over when the requests were refused.

Negotiations for settlement were conducted by the various parties, but no agreement was reached prior to trial. Shortly after the trial commenced, appellants Zamzow's, Inc., and Liquefied Vangas, Inc., entered into an agreement with plaintiff Williams pursuant to which Williams, in consideration of the payment to him of $4,000 (which was paid $2,000 by each appellant), agreed not to execute against the appellants. Respondents and the court were advised of the settlement during the trial.

Trial of the case continued on the basis of plaintiff's complaint against all parties. Special interrogatories were submitted to the jury, which were returned. The jury's answers to the special interrogatories established that respondents were negligent as to plaintiff Williams and assessed damages against respondents in the sum of $9,000. Other interrogatories were returned by the jury wherein the jury found there was no negligence on the part of either appellant, Zamzow's, Inc., or Liquefied Vangas, Inc.

During the course of the trial respondents dismissed their cross-claim against appellants.

Judgment was later entered in favor of plaintiff Williams against respondents in the amount of $9,000. Respondents filed a motion to amend the judgment to reduce the amount of the judgment from $9,000 to $5,000, inasmuch as Williams had already received $4,000 by reason of the payments by appellants for the covenant not to execute. Motion for new trial was also filed by respondents. The trial court granted the motion to amend the judgment, and denied the motion for new trial. The judgment, as amended to $5,000, was subsequently satisfied by respondents' attorney.

Following amendment of the judgment and denial of the motion for new trial, appellants' respective cross-claims against respondents were still pending. Appellants each moved to amend their respective cross-claims seeking indemnification from respondents Johnston for the money each had

**294**

paid to plaintiff Williams for the covenant not to execute. The appellants also moved for partial summary judgment on their respective cross-claims, leaving for future determination the issue as to the amount of attorneys' fees which they claimed respondents Johnston were obligated to pay.

The motions by appellants for summary judgment on their cross-claims were denied by the court, and the court entered summary judgment in favor of respondents Johnston. It is from this summary judgment in favor of the Johnstons that this appeal was perfected.

By their assignments of error, appellants assert that the trial court erred in entering summary judgment in favor of respondents, and in not entering summary judgment in their favor for amounts paid for the covenant not to execute, and for their attorneys' fees and reasonable costs incurred in defending against plaintiff Williams' complaint.

Appellants contend that under the theory of indemnity they are entitled to recover the sums paid for the covenant not to execute and their attorneys' fees and costs incurred in defending the action instituted against them by Williams. The substance of their argument is that the jury by its verdict found appellants to be blameless insofar as plaintiff's injuries and damages were concerned, and that only because of respondents Johnstons' negligence as found by the jury, was plaintiff injured; and because of Johnstons' negligence the accident occurred and appellants were brought into the lawsuit. They further contend that the expenses to which they were put and the payment made in securing the covenant not to execute were all made by reason of the compulsion of the pending lawsuit, and thus appellants are not to be considered as volunteers.

As to when a party is entitled to indemnity from another party for damages the indemnitee allegedly suffered or paid because of the act of the indemnitor, the courts have been faced with a multitude of different factual situations. The relation-ship of indemnitor-indemnitee in many instances arises out of specific indemnity contracts. In other situations the courts have dealt with the issues presented on the basis that the rights of a party to indemnification were founded on contract, either express or implied. See 42 C.J.S. Indemnity § 2 (1944); 27 Am.Jur. Indemnity § 16 (1940).

Various text writers and courts have recognized that the obligation to indemnify is not limited to the field of contract, express or implied, and have placed the obligation of one party to indemnify another on the principle that "The theory of such right of indemnity is sometimes explained as being implied in law from the relationship of the parties." Hodges, Contribution and Indemnity Among Tortfeasors, 26 Texas L. Rev. 150, 152 (1947); Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L.Rev. 517 (1952); Prosser, Torts § 46 at 249 (2d ed. 1955).

Indemnity cases dealing with tort situations and the obligation of one alleged tort-feasor to indemnify another party fall into somewhat well defined factual patterns based on recognized legal relationships. Such classification facilitates consideration of the principles upon which liability of an indemnitor to an indemnitee is founded. This is well pointed out in Prosser, Torts, wherein it is stated:

"Thus it is generally agreed that there may be indemnity in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer, as where an employer is vicariously liable for the tort of a servant, or an independent contractor. Likewise where one is directed or employed by another to do an act not manifestly wrong, or is induced to act by the fraudulent representations of the other, he is generally held to be entitled to indemnity when a third party recovers against him. A similar rule has been implied to indemnity against a supplier of goods, or a contractor making improvements and repairs, when liability to a third person is

incurred by reason of negligent reliance upon his proper care. Again, it is quite generally agreed that there may be indemnity in favor of one who was under only a secondary duty where another was primarily responsible, as where a municipal corporation, held liable for failure to keep its streets in safe condition, seeks recovery from the person who created the condition or a property owner who permitted it; or an owner of land held liable for injury received upon it sues the wrongdoer who created the hazard.

"There is in addition considerable authority that one whose negligence has consisted of mere passive neglect may have contribution from an active wrongdoer; or that one who has been merely negligent may obtain it from another who has been guilty of intentionally wrongful or reckless conduct, although there can be no indemnity in favor of the intentional tortfeasor himself. It has even been held that the doctrine of the last clear chance is to be applied to permit indemnity for the earlier liability against the later.

"It is difficult to state any general rule or principle as to when indemnity will be allowed and when it will not. It has been said that it is permitted only where the indemnitor has owed a duty of his own to the indemnitee; that it is based on a 'great difference' in the gravity of the fault of the two tortfeasors; or that it rests upon a disproportion or difference in character of the duties owed by the two to the injured plaintiff. Probably, as is so often the case in the law of torts, no one explanation can be found which will cover all the cases; and the duty to indemnify, like so many other duties, arises where community opinion would consider that in justice the responsibility should rest upon one tortfeasor rather than another." Prosser, Torts 250–251 (2d ed. 1955).

Another classification of the various indemnity cases involving torts is to be found in Davis, Indemnity Between Negligent Tort-Feasors, supra.[1]

---

1. Davis, in his article, discusses and cites cases under this outline:
"Negligence Cases in Which Courts have Awarded Indemnity
A. Cases of Imputed or Derivative Liability.
"1. Agency cases. The simplest and strongest case for indemnity is the situation where liability has been imposed on a person not because of any fault on his part, but solely because of his relation to the one personally at fault.
* * *
"2. Cases analogous to agency cases. The same principle applies in any case where the one seeking indemnity has been held liable, not because of any personal fault, but because of a duty imposed by law, by virtue of his relationship to another, making him responsible for the negligence of the other. This rule does not depend on the existence of a clear-cut master-servant or principal-agent relationship. It obtains, for instance, in cases where some rule of law imposes liability on a man for the negligent act of an independent contractor whom he has hired, or where a contractor not personally at fault is held for the negligent act of his sub-contractor.

* * *
"3. Consent Statute. [automobile consent statute making owner liable for damages caused by the negligence of one driving with the owner's consent]
"4. Workmen's compensation. A common indemnity case, in situations involving employer-employee relations, is the employer's right over against a third person who caused an injury to an employee for which the employer has had to pay workmen's compensation. The right to indemnity arises because the employer, like the master who has had to pay damages for the tort of his servant, has been held responsible without regard to his personal fault. * * *.
"B. Safe Premises or Property Cases
"Cases where the issue as to indemnity is intertwined with such duties an an owner has to keep his premises or other property in a safe condition are of two general types. Cases of the first type are those where a landowner or occupier seeks indemnity from someone who has disturbed his property or has created a condition on it which causes injury to a third person, and which gives rise to a right of action in favor of the injured

Even if it be considered that this case is one where the right to indemnity would normally be found in favor of appellants, respondents point to one facet of the case wherein they contend the proof for indemnity fails. It is to be kept in mind that in resolution of the factual issues by special interrogatories, the jury found that these appellants were free from any negligence as to the plaintiff—a factual determination by the jury that there was no legal liability on the part of appellants to plaintiff. By reason of this finding, respondents say that they are not liable to appellants. Respondents assert that the fundamental and only legal basis for the right to indemnity is *compulsory*, not volunteer payment, citing among other authorities, 42 C.J.S. Indemnity § 25 (1944), the headnote of which states:

"The right to sue for indemnity accrues when payment has been legally

person against the landowner or occupier. * * *.

"The second type of 'safe premises or property' case is that sort of situation where some person, who has been adjudged liable to a third person because of a faulty condition of the owner's property, seeks indemnity from the owner; the indemnity action being founded on the owner's negligence in causing or allowing his premises or personal property to be in the unsafe condition. * * *.

"C. City Street and Sidewalk Cases

"Actions for indemnity against landowners or occupiers, or against owners of personal property, are frequently brought by cities or towns which have been held liable for injuries to persons using streets or sidewalks. * * *

"D. Cases Involving a Supplier's Liability For His Product

"1. Retailer cases. Indemnity is allowed against the maker or supplier of a chattel in cases where a retailer who has re-sold the product has been held liable to a third person because of defects in the product which were unknown to the retailer at the time of the sale. * * *.

"2. Use cases. Indemnity against manufacturers or suppliers of chattels is not limited to cases where an intermediate vendee seeks indemnity because the product injured the ultimate consumer. Indemnity can also be had where a defect in the product exposes one using it to liability to third persons. * * *.

made by the indemnitee. While, to be entitled to indemnity, *an actual legal liability must have been sustained,* the indemnitee may adjust and pay the claim without awaiting the result of suit, provided the amount paid is reasonable and just and was paid in good faith." (Emphasis added.)

There appears to be merit in respondent's contention that a purported indemnitee is not entitled to recover for sums paid in settlement of a claim against such indemnitee, in the absence of a legal obligation to make such payments. In Nelson v. Sponberg, 51 Wash.2d 371, 318 P.2d 951 (1957), it is stated:

"As recognized in that case [Oregon-Washington R. & Nav. Co. v. Washington Tire & Rubber Co., 126 Wash. 565, 219 P. 9 (Wash.1923)], Washington is with the majority of courts which hold that an indemnitee who seeks reimburse-

"E. Indemnity in Favor of an Employee Directed to do an Act Not Manifestly Wrong

"Another clear case for indemnity arises out of the situation in which an employee does an act, on the orders of his employer, which the servant has no reason to believe to be wrongful, but which is in fact tortious. If the employee is held liable to the injured third person in such a case, he has a right to indemnity from his employer. * * *.

"F. Cases Involving Building Contractors

"Building contractors frequently become involved in situations where problems of indemnity arise. Such cases divide into two general groups: (1) the contractor has to indemnify someone who has been exposed to liability after the completion of the work because of the contractor's negligence in making a faulty structure, and (2) the contractor has to indemnify one who has been held responsible for injuries to third persons resulting from negligence of the contractor while the work is being done. * * *.

"G. Vehicle cases

"One surprising thing about the law of noncontractual indemnity in negligence cases is the sparsity of cases involving moving vehicles. Most vehicle cases in which the writer found indemnity awarded were cases in which a public carrier of passengers recovered over for damages paid to its passenger. * * *."

ment from his indemnitor for a payment made by him in discharge of a claim indemnified against is not bound to submit to suit before paying the claim; but if he pays without such suit, as a condition of recovery from his indemnitor, he is under the necessity of proving that he was liable for the amount thus paid." 318 P.2d at 954.

Other cases, wherein it is held that a party who has settled an asserted claim must establish his liability to the injured party before he is entitled to indemnity are: Scarbrough v. Murrow Transfer Co., 277 F.Supp. 92 (E.D.Tenn.1967); Carpenter Paper Co. v. Kellogg, 114 Cal.App.2d 640, 251 P.2d 40 (1952); Southern Nitrogen Co. v. Stevens Shipping Co., 114 Ga.App. 581, 151 S.E.2d 916 (1966); Muhlbauer v. Kruzel, 78 Ill.App.2d 343, 223 N.E.2d 227 (1966); Aetna Freight Lines v. R. C. Tway Co., 352 S.W.2d 372 (Ky.Ct.App.1961); Southwest Mississippi Elec. Power Ass'n v. Harragill, 254 Miss. 460, 182 So.2d 220 (1966); Edwards v. Hamill, 262 N.C. 528, 138 S.E.2d 151 (N.C.1964); Pan Am. Gas Co. v. National Gas Constr. Corp., 418 S.W. 2d 380 (Tex.Civ.App.1967); Oregon-Washington R. & Nav. Co. v. Washington Tire & Rubber Co., 126 Wash. 565, 219 P. 9 (Wash.1923).

In their brief, appellants have cited a number of cases hereinafter discussed in this and succeeding paragraphs for the proposition that a payment made in good faith under the compulsion of a lawsuit to compromise a claim of alleged liability is not voluntary and the payor may be entitled to indemnity. The cases so cited stand for that proposition, as far as it goes. However, in the following cases that appellants cite: Chicago, R. I. & Pac. Ry. v. United States, 220 F.2d 939 (7th Cir. 1955); Baltimore & Ohio R. R. v. Commercial Transp., Inc., 273 F.2d 447 (7th Cir. 1960); Atchison, T. & S. Fe Ry. v. Hadley Auto Transp., 192 F.Supp. 849 (D. Colo.1961); the party seeking indemnity was a railroad seeking from a third party tortfeasor indemnification for payments the railroad had made to one of its employees, in settlement of the employee's claim against the company. In Chicago, R. I. & Pac. Ry., supra, while the appellate court recognized that the trial court in the indemnity action found no negligence on the part of the railroad company towards its employee, still it pointed to the trial court's finding that the settlement payment was made "for the purpose of discharging the *secondary legal liability* of the plaintiff to its employee." (Emphasis added.) Therein the court pointed to the case of Gulf, M. Ohio R. R. v. Arthur Dixon Transfer Co., 343 Ill.App. 148, 98 N.E.2d 783 (1951), wherein it is stated:

"Thus in these decisions the courts say plaintiff (indemnitee) was without fault or that he was only technically negligent even though the liability was based on legal negligence. What is meant is that *plaintiff by act of defendant was made liable for failing to discharge a responsibility even though he, plaintiff, was not guilty of any active negligence.*" (Emphasis added.) 98 N.E.2d at 787.

It is to be kept in mind in analyzing these railroad cases that the liability of a railroad to its employee is governed by the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. and the courts in resolving issues of indemnity for the employer have directly or indirectly recognized the probable liability of the railroad employer to its employee, based on such statute.

Another of appellants' cases is States S. S. Co. v. Howard, 180 F.Supp. 461 (D. Ore.1960). There the trial court recognized the existence of a liability of the indemnitee steamship company to its employee, when it stated the indemnitee was "secondly liable for its passive tort and may seek indemnity from Howard as a third party primarily liable, for his active tort." In Pacific Tel. & Tel. Co. v. Pacific Gas & Elec. Co., 170 Cal.App.2d 387, 338 P.2d 984 (1959), the appellate court recognized liability to the deceased person on the part of the claimed indemnitee when it

298

stated that "However, Pacific Telephone's liability here was based on its joint ownership of the pole." In this case there was also a formal indemnity agreement between the parties. St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712 (1905), involved interpretation of an indemnity insurance contract. Therein the facts reflected that the plaintiff was liable for damages on account of bodily injuries which the plaintiff settled.

Appellants' cases do not depart from the requirement of liability of an indemnitee to the injured party and such liability appears to be a prerequisite to recovery in the indemnity action.

Appellants further contend, however, that the law favors settlements and in protecting the best interests of his client, an attorney often is required to negotiate a reasonable settlement rather than trust to the uncertainties of a trial; that both reason and legal authority indicate that a party otherwise entitled to indemnity should not be penalized for attempting to protect his rights by entering into a settlement which appears favorable under the circumstances presented at the time of the negotiations. With this general contention there can be no dispute. However, a settlement agreement between plaintiff A and defendant B should not be the basis of imposing a liability on defendant C to indemnify B without a showing of liability of B to A.

It is the conclusion of the court that unless liability of the claimed indemnitee to the third party is established, the right to indemnification does not arise.

Appellants further assert that they are entitled to become subrogated to the rights of the injured party against the person whose actual negligence caused the injury. For the right of subrogation to arise, it is first essential that the party making a payment to a third person is under an obligation to make such a payment or has a recognizable interest to protect. In Gerken v. Davidson Grocery Co., 57 Idaho 670, 69 P.2d 122 (1937), this court in discussing the doctrine of subrogation stated:

"This court in Houghtelin v. Diehl, supra, [47 Idaho 636, 277 P. 699 (1929)], in defining the doctrine of subrogation, had this to say:

" 'Subrogation, in its broadest sense, is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities. The doctrine is derived from the civil law from which it has been adopted by the courts of equity. * * * Its principle is often extended to those who, because of their interest in the property on which debts of others are a charge, are entitled to pay such debts and be substituted to the place of the original creditor. Generally speaking it is only in cases where one advances money to pay the debt of another to protect his own rights that a court of equity substitutes him in place of the creditor as a matter of course, without any express agreement to that effect. The doctrine of subrogation is not administered as a legal right but the principle is applied to subserve the ends of justice and to do equity.'

"In Richardson v. American Surety Co., 97 Okl. 264, 223 P. 389, 392, the court said:

" 'The principle to be derived from the doctrine of subrogation is that it is born of equity and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity and benevolence. It is a purely equitable result depending like other equitable doctrines, upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it.'

"In the same case, the court further said:

" 'No doctrine of equity jurisprudence is more beneficent in its operation than is subrogation, and perhaps none stands in higher favor. No general rule can be laid down which will afford a test in all cases for its application, and its exercise depends upon the particular facts and circumstances of each case, and is not enforced as a matter of legal right, but in order to subserve the ends of justice in the particular controversy under consideration.'

"Jones on Mortgages, § 1114, states the principle as follows:

" 'One who has paid a debt under colorable obligation to do so, in order that he may protect his own interest, or under an honest belief that he is bound, is entitled to be subrogated and where one pays a debt in good faith believing that he has an interest to protect, he will be subrogated though he be mistaken in such belief.'

" * * *.

"It appearing that the Gerkens in good faith made payments in the total sum of $1664.33 for the protection of the community interest in the property, that such payments inured to the benefit of appellant, and that the Gerkens received no benefit from such payments, to refuse, under these circumstances, to apply the rule of subrogation would be most inequitable and unjust. It would amount to taking that sum from the respondent and handing it over to the appellant without any consideration therefor." 57 Idaho at 679, 680, 69 P.2d 126, 127.

In Wilson v. Wilson, 6 Idaho 597, 57 P. 708 (1899), this court determined that when a person under obligation to do, or interested in so doing, pays the debts of another, he may be subrogated to all the rights, securities, or remedies of the creditor whom he satisfies. Therein it was also held that a person who was only a volunteer cannot invoke the aid of subrogation.

Under the facts presented by this record it is difficult to classify the appellants as "volunteers." They had an interest to protect in that they were directly involved as defendants in a lawsuit wherein the plaintiff contended that they were liable by reason of equipment appellants had furnished to the other defendants (respondents Johnston and wife) which equipment used by the Johnstons was instrumental in causing the plaintiff's injury (Zamzow's having rented the trailer to respondents Johnston, and Liquefied Vangas being the owner of the trailer). These appellants were under the cloud of potential liability dependent upon resolution of a factual controversy as developed in the lawsuit and further dependent upon the resolution of the controversy by the jury.

Appellants each paid $2000 to the plaintiff in exchange for a covenant not to execute against them in the event that the jury in resolving the factual controversy found against either of these appellants. The jury's answers to the special interrogatories ultimately relieved them of responsibility for the accident, but that was not known to any of the parties at the time of the agreement between the appellants and plaintiff Williams. The interest that these appellants had to protect was of not being held ultimately liable for the whole of the plaintiff's damages. The trial court, on the basis of the jury's findings, entered a judgment establishing the amount of the plaintiff's damages, assessing them against the respondents Johnston, who were the only parties found to be at fault. Later, upon the motion of the Johnstons, this judgment was reduced by the amount of appellants' payments to Williams, i. e., $4,000, to the final judgment of $5,000.

This court has allowed subrogation in a variety of situations. See Gerken v. Davidson Grocery Co., supra; Peterson v. Hague, 51 Idaho 175, 4 P.2d 350 (1931); Judd v. Ludke, 50 Idaho 459, 296 P. 1080 (1931); Keel v. Vinyard, 48 Idaho 49, 279 P. 420 (1929); Wilson v. Wilson, supra. In two cases wherein this court refused to

apply the doctrine of subrogation, it appeared that rights of third parties would have been adversely affected had subrogation been allowed. See: Houghtelin v. Diehle, 47 Idaho 637, 277 P. 699 (1929); Porter v. Title Guar. & Sur. Co., 17 Idaho 364, 106 P. 299, 27 L.R.A.,N.S., 111 (1909). No rights of third parties are adversely affected in this case. The payments made to Williams by the appellants were applied by the court in reduction of Johnstons' liability to Williams. Had such payments not been made, under the facts here, the Johnstons would have had to pay the full amount to Williams, and allowing subrogation here does no more than require the Johnstons to pay the amount of the damage their negligence caused.

In 83 C.J.S. Subrogation § 16, at 617–618 (1953), it is stated:

"A person voluntarily satisfying the debt or default of another can claim no right of subrogation; but it is apparently sufficient *if there is a practical compulsion to pay, although there may be no strict legal obligation to do so,* or if because of mistake, the payor believes that it is his legal duty to pay." (Emphasis added.)

It is our conviction, under the facts presented by this record, that the appellants were under sufficient compulsion in the payments they made to justify the conclusion that they were neither "volunteers" nor that they were officious in conferring a benefit on respondents. Restatement, Restitution § 2 (1937); See Restatement, Restitution § 71(2) (1937); Accord, Perkins v. Worzala, 31 Wis.2d 634, 143 N.W. 2d 516 (1966).

It being determined that the appellants are not to be classified as "volunteers," it necessarily follows that they are entitled to be subrogated to the amount the payments were credited on the obligation respondents owed to the plaintiff, Williams.

The record before this court does not reflect any elements of collusion as between the plaintiff and these appellants; nor does it reflect that the settlement as between Williams and the appellants was other than one worked out at arms length; nor does the record reflect any doubt as to the reasonableness of the settlement, both as to amount and the potential liability of appellants.

It is the conclusion of the court that appellants are entitled, under the theory of subrogation, to repayment of the amount their payments were credited on the obligation respondents owed the plaintiff Williams before reduction of the judgment. Unlike a case under the theory of indemnity, where in some instances attorneys fees may be recovered, here, under the theory of subrogation, attorneys fees cannot be allowed. This result is necessitated by the fact that the plaintiff was entitled to no attorneys fees against the Johnstons, and appellants' rights against the Johnstons being based on subrogation, would not include attorneys fees.

The conclusions reached on the basis of the facts presented by this appeal avoid the incongruity of a person, who in good faith settles a claim against himself and who is subsequently found not to be at fault, being deprived of any "recovery over" against the party responsible; while had he been found liable in any degree to the injured party, "recovery over" would have been considered.

As a caveat to this opinion, it is to be pointed out that this case is one which does not involve the question of contribution as between joint tort-feasors, and the particular rules applicable in that situation.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in accordance with the views herein expressed. Costs to appellants.

TAYLOR, McQUADE and SPEAR, JJ., and HAGAN, D. J., concur.