773 P.2d 275

TRANSAMERICA INSURANCE COMPANY, a California corporation, and King Machinery, Inc., an Idaho corporation, Plaintiffs Respondents–Cross Appellants,

v.

C.J. WIDMARK, Mark Line Supply Company and John David Bishop, Defendants Counter–Claimants–Appellants, Cross Respondents,

v.

KING MACHINERY, INC., an Idaho corporation, Counterdefendant–Respondent–Cross Appellant.

No. 17457.

Supreme Court of Idaho.

April 20, 1989.

Law Offices of Charles D. Coulter (argued), Boise, for defendants counter-claimants-appellants, cross respondents.

Quane, Smith, Howard & Hull, Randall R. Adams (argued), Boise, for plaintiffs respondents-cross appellants.

JOHNSON, Justice.

This is a subrogation action by an insurance company. The primary issue is whether the trial court applied the correct measures of damages in awarding $32,100.00 to Transamerica Insurance Company (Transamerica) and King Machinery, Inc., formerly King & Priest Machinery, Inc., (King) because of damage to two pieces of machinery (the ironworker and the lathe) caused by C.J. Widmark, Mark Line Supply Company and John David Bishop (referred to collectively as Widmark). In making this award the trial court included $7,100.00 for damage to the ironworker, based on an admission of Widmark. We reverse this portion of the trial court's summary judgment on the ground that there were genuine issues of material fact as to whether the ironworker was repaired, and, if so, what the cost of that repair was.

The trial court also awarded $25,000.00 to Transamerica because of damage to the lathe. In doing so, the trial court found this amount to be the reasonable cost of repair of the lathe. We hold that the proper measure of damages should have been the amount Transamerica reasonably paid to settle a lawsuit brought against King by Cadillac Machines, Inc. (Cadillac), the owner of the lathe. We reverse the award and remand this issue to the trial court for a determination whether the settlement between King and Cadillac was a reasonable settlement.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

King owned the ironworker jointly with another company. King sold the ironworker to a purchaser in California for approximately $14,000.00. By the terms of the sale, King was to ship the ironworker to the purchaser.

King received the lathe on consignment from Cadillac for display at an open house in Boise, Idaho. The invoice price of the lathe was $51,814.50. Because the lathe was not sold at the open house, King was required to return it to Cadillac in California.

Following the open house, King contracted with Mark Line for the transportation of the ironworker and the lathe to California. Widmark owned Mark Line. Bishop was employed by Widmark and Mark Line as the driver of the truck on which the ironworker and the lathe were to be transported to California. On March 25, 1979, the truck rolled over due to the negligence of Bishop, and the ironworker and the lathe were damaged.

Transamerica insured King under an insurance policy (the policy). The policy included inland marine coverage for property of King, or property for which King was liable, while the property was "in due course of transit." The limits of liability under the inland marine coverage of the policy was $20,000.00. Under the terms of the policy, upon receiving payment for the amount of a loss under the inland marine coverage, King was required to assign and transfer to Transamerica any right of action against any third party that arose because of the loss and to subrogate Transamerica to all King's "rights and demands of every kind, respecting the same, up to the amount of payment."

The policy also contained various forms of coverage insuring King against liability for property damage, including $1,000,000.00 commercial umbrella coverage. The policy provided that if any payment were made under the policy because of these coverages, Transamerica would be subrogated to King's rights of recovery against any third party.

King filed a proof of loss under the inland marine coverage stating that at the time of the accident the actual cash value of the ironworker was $8,700.00 and the salvage value was $1,500.00. After deducting King's $100.00 deductible, Trans-

america paid King $7,100.00 for the damage to the ironworker.

Cadillac sued King in federal district court in California for the value of the lathe, alleging that it had been entirely destroyed and was not usable. This action was based on allegations of breach of contract, negligence, account stated, open book account, and money had and received. Transamerica defended King in the federal case. On behalf of King, Transamerica settled the case in December 1980 by paying Cadillac $43,500.00. Cadillac and King signed a mutual release authorizing the dismissal of the action.

On March 8, 1982 this suit was brought in the name of King requesting indemnity in the amount of $43,500.00, plus costs and fees for defending the case brought by Cadillac. In May 1983, King submitted requests for admissions to Widmark pursuant to I.R.C.P. 36. Widmark did not make a timely response to the requests for admissions. Among the requests for admissions was one requesting Widmark to admit that King had paid Cadillac $57,000.00 for failure to deliver the lathe and that this was a reasonable amount for the settlement of the claim of Cadillac. Another request asked Widmark to admit that the value of the damage sustained by King as a result of the damage caused to the ironworker, after recovery of the salvage value, was $7,100.00. Ten months after the requests for admissions were filed, Widmark attempted to withdraw the admissions and to submit a response, claiming that an earlier response had not been made because of an understanding between counsel. The trial court rejected this effort and granted King's motion to strike the response.

In August 1986, King moved to amend the complaint to add Transamerica as a real party in interest and to relate the amended complaint back to the date of the filing of the original complaint. In February 1987, the amended complaint was filed. The amended complaint alleged that Transamerica was the subrogee of King and sought indemnification in the amount of $43,500.00, plus costs and attorney fees for defending the action brought by Cadillac, and $7,200.00 for the damage caused to the ironworker, of which $7,100.00 had been paid by Transamerica.

In January 1987, the trial court ruled that Mark Line was operating as a common carrier in transporting the ironworker and lathe for King. The trial court ruled that as a common carrier Mark Line was held to the common law standard of care under the Carmack Amendment, 49 U.S.C. § 11707.

In April 1987, the trial court granted summary judgment in favor of King and Transamerica on the issue of liability and on damages relating to the ironworker in the amount of $7,100.00. The trial court rejected Widmark's contention that King had entered into an enforceable agreement with Widmark to provide insurance for the transportation of the ironworker and the lathe. With regard to the amount paid to settle Cadillac's claim against King, the trial court stated:

> Initially, a damage amount of $57,000.00 was established by requests for admission. However, subsequent computation indicates the amount to be the $43,500.00 instead of the $57,000.00. This calls into question the validity of basing a judgment on an erroneously admitted request for admission, the admission being for an amount greater than actually due. It being established that the admitted fact was not accurate, it is inappropriate to bind the defendant to a lesser amount which the plaintiff now contends is accurate. The defendant is entitled to respond to the $43,000.00 (sic) claim rather than being bound by the admission.

The trial court allowed the parties to file supplemental affidavits or authorities within fifteen days on the issue of the amount of damages relating to the lathe. Widmark moved for reconsideration, arguing that they should have the opportunity to ascertain the actual cost of repairs to the lathe and whether the ironworker was ever repaired at all.

Transamerica submitted an affidavit of its Boise claims manager, who stated that $43,500.00 was a fair and reasonable settlement of the claim of Cadillac against King.

King submitted an affidavit of one of its officers, who stated that following the accident the lathe was severely damaged, that it would have cost many thousands of dollars to repair the lathe, that even if the lathe could have been repaired, its value would have been substantially less than its value before it was damaged, and that the $43,500.00 paid to Cadillac was a fair and reasonable amount. Widmark submitted the affidavit of a former employee of King in which he stated that to the best of his knowledge the ironworker was repaired and sold. He also stated that he believed that before it was repaired the ironworker could have been sold for $5,000.00 minimum.

In June 1987, the trial court heard arguments on the motion for reconsideration. The trial court commented that as to the lathe the amount of damages was at issue, and the case should be set for trial. The trial court stated that as to the ironworker, further discovery would be allowed.

In September 1987, the trial court issued an order stating (1) that the reasonableness of the settlement with Cadillac was open, (2) that the amount of actual damages relating to the lathe was in issue, (3) that the amount of actual damages relating to the ironworker was also open, (4) that the previous rulings and summary judgment relating to the ironworker and to damages were set aside, and (5) that further discovery would be permitted as to the tracing of the transactions and the issue of damages or reasonableness of the settlement with Cadillac.

In November 1987, the deposition of the person who had repaired the lathe (Criss) was taken. Criss testified that he and another man purchased the damaged lathe for $10,000.00, repaired it, and sold it for $40,000.00. He said that they spent $10,000.00 to $12,000.00 in repairing the lathe and that because he and his partner had access to technicians that the repairs would have cost others twice as much.

The deposition of a claims adjustor (Mitchell) for Transamerica was also taken in November 1987. Mitchell identified a memo he had written concerning the damage to the lathe. The memo stated that it was the opinion of an appraisal company that the lathe could be repaired for something in the area of $25,000, but that Cadillac had refused to consider repairs, because the lathe would then be a used machine and Cadillac would "not let their name be put on the machine."

Transamerica and King again moved for summary judgment. In response Widmark filed the affidavit of Parley Davis (Davis), a former employee of Ace Company (Ace), a machine and manufacturing company in Boise. Davis stated in his affidavit that in April 1979, Ace received an ironworker from King to be repaired. He stated that this ironworker had been damaged in transit and was the same size as the one that had been damaged in the accident. He identified an invoice for $889.28 from Ace to King dated June 25, 1979, for the repair of the ironworker that Ace had received from King. Except for repainting, he said there was nothing else needed to repair the ironworker to its condition before it was damaged.

In ruling on this new motion for summary judgment, the trial court found that Widmark was liable to King for damages to the ironworker in the amount of $7,100.00. In doing so the trial court appeared to rely on its summary judgment of April 1987, without referring to its order of September 1987.

The trial court also ruled that the proper measure of damages relating to the lathe was not the amount paid by Transamerica to settle the lawsuit between Cadillac and King, but instead, the reasonable cost of repair. The trial court found that $25,000.00, the estimated cost of repairs indicated in Mitchell's memo, was the proper amount to award Transamerica.

The trial court entered summary judgment for $32,100.00 against Widmark. Widmark has appealed from this summary judgment raising several issues. Transamerica and King have cross-appealed on the ground that the trial court should have awarded $43,500.00 relating to the lathe.

## II.
### STATUTE OF LIMITATIONS WAS NOT PLEADED WITH PARTICULARITY.

On appeal Widmark asserts that the three year statute of limitation of I.C. § 5–218 (1979) should bar the amended complaint. The record before us does not indicate that Widmark pleaded this statute with particularity as required by I.R.C.P. 9(h) (1987). The amended complaint was filed on February 2, 1987, almost eight years after the accident. In its answer to the amended complaint, Widmark asserted as an affirmative defense that Transamerica and King had "failed to join all proper parties within the Statute of Limitations." Nothing else in the record indicates that any particular statute of limitations was raised before the trial court.

I.R.C.P. 9(h) requires that the party pleading the statute of limitations must "allege with particularity the Session Law or the section of the Idaho Code upon which the pleader relies." Since the particular section of the statute of limitations upon which Widmark relied was not designated in the trial court, the availability of I.C. § 5–218 as a defense will not be considered on appeal. *Resource Engineering, Inc. v. Siler*, 94 Idaho 935, 939–40, 500 P.2d 836, 840–41 (1972).

## III.
### ANY ORAL AGREEMENT BY KING TO PROVIDE INSURANCE WAS VOID.

Widmark alleged that King made an oral agreement to provide insurance for the transportation of the ironworker and the lathe. King denied doing so. The trial court ruled that even if there had been such an agreement, it would have been void and unenforceable under the Carmack Amendment, a federal law that regulates common carriers. 49 U.S.C. § 11707. The trial court pointed out that federal regulation requires a common carrier to maintain its own cargo insurance. 49 C.F.R. §§ 387.7 and 387.9 (1987). We agree with the trial court.

## IV.
### DAMAGES RELATING TO THE IRONWORKER.

Widmark asserts that the trial court incorrectly determined the damages relating to the ironworker. The challenge to the award of $7,100.00 is premised on several grounds. We conclude that there was a genuine issue of material fact as to the amount of damages relating to the ironworker and reverse the trial court's summary judgment on this issue.

One of the requests for admissions submitted to Widmark by King in May 1983, stated:

> Admit that the value of the damage sustained by King & Priest Machinery, Inc., as a result of the damage caused to the Mubea ironworker ... was $7,100.00, after recovery of the salvage value of the Mubea ironworker.

No response was made to this request within the fifteen days allowed under I.R.C.P. 36(a). Pursuant to this rule, this matter was admitted because no objection was filed within the time allowed. Ten months after the requests were submitted, Widmark attempted to withdraw the admissions. The trial court denied the motion. Widmark argues that the trial court relieved it from the effect of the admissions by the order of September 1987. We agree.

In its order of September 1987, the trial court changed its ruling that the $7,100.00 admission was binding on Widmark. In its earlier memorandum opinion of April 1987, the trial court had stated: "The $7,100.00 is established." In its order of September 1987, the trial court stated that the amount of actual damages relating to the ironworker was open and that "[p]revious rulings and Summary Judgment as the same may relate to the iron worker and to damages are set aside."

Transamerica and King would have us believe that the trial court merely misspoke and instead intended to refer to the lathe. We are unable to accept this explanation. The portion of the order immediately pre-

ceding the references to the ironworker states: "The amount of actual damages relating to the lathe is in issue." This suggests that when the trial court directed its attention to the ironworker in the next sentence of the order, it intended to reopen the issue of the amount of damages relating to the ironworker that had been resolved in the April 1987 ruling. This conclusion is strengthened by the portions of the order setting aside "[p]revious rulings and Summary Judgment as the same may relate to the iron worker and to damages." Since the trial court had not previously awarded any damages relating to the lathe, this portion of the order would have no meaning if "lathe" were substituted for "iron worker."

When the trial court returned to the subject of the damages relating to the ironworker in its memorandum opinion of February 1988, it acknowledged that in its April 1987 decision it had found Widmark liable to King for damages to the ironworker in the amount of $7,100.00. The trial court then ruled that Transamerica was entitled to recover $7,100.00 from Widmark for damage to the iron worker. It is clear to us that the trial court awarded this $7,100.00 to Transamerica based on the admission that this was the amount of damage that King had sustained as a result of the damage to the ironworker. It was to this claim that Transamerica was subrogated. We are unable to reconcile this award and the portions of the order of September 1987, setting aside the previous orders and summary judgment relating to the ironworker.

■ After the September 1987 order had been entered, Widmark presented an affidavit to the trial court alleging that the ironworker had been repaired for $889.28. This raised genuine issues of material fact as to whether the ironworker was repaired and the cost of the repair. Once the trial court set aside its previous orders and summary judgment relating to the damage to the ironworker, the trial court should not have relied on the $7,100.00 as the amount of damage to the ironworker. If the ironworker was repairable, the measure of

damages should have been the cost of the repair. *Skaggs Drug Centers, Inc. v. City of Idaho Falls*, 90 Idaho 1, 10, 407 P.2d 695, 699 (1965).

We reverse the $7,100.00 award for damages to the ironworker and remand this issue to the trial court for further proceedings.

## V.

## DAMAGES RELATING TO THE LATHE.

■ Transamerica asserts that the trial court should have awarded it $43,500.00 because of the settlement with Cadillac for the damage to the lathe. Transamerica characterizes its claim as one for indemnification. Transamerica argues that the focus should be the reasonableness of the settlement with Cadillac, rather than the amount necessary to repair the lathe. We agree.

By failing to file a timely response to the requests for admissions Widmark admitted that the negligence of Widmark's driver, Bishop, was the cause of the accident that damaged the lathe and the ironworker. The trial court ruled that this admission foreclosed Widmark from asserting an affirmative defense that King was contributorily negligent. As between King and Widmark, it was Widmark's negligence that was the sole cause of the damage to the lathe.

One of the claims of Cadillac against King was that King was negligent in transporting the lathe, causing its total destruction. In September 1980, the attorney employed by Transamerica to represent King in the action brought by Cadillac wrote to Transamerica reporting the status of the suit:

The primary issue that concerned the court was the question of negligence. In this regard we had undertaken some considerable research into the question of the negligence of the trucker as it relates to our client. . . .

In any bailment situation it is the obligation of the bailee to return the goods. If he fails to return the goods in an

undamaged condition he must prove that the damage to the goods was not caused through any fault of his own. In other words the burden in this case is on King & Priest to establish that the goods were damaged without any fault on their part. [Citation omitted.]

This raises the question of whether the trucker was our agent or whether he was an independent contractor for purposes of this transaction. If he was in fact our agent plaintiff would have no problem of any kind. If however he is found to be an independent contractor there is still some authority for the proposition that we are liable for the negligence of the driver of the truck in turning the truck over.

The attorney then cited *Continental Manufacturing Corp. v. Underwriters at Lloyds, London,* 185 Cal.App.2d 545, 8 Cal. Rptr. 276 (1960) for the proposition that a bailee is responsible for damages by the negligence of agents, employees, or independent contractors that had been employed to perform work on the bailed property. The attorney concluded that "there is ample authority for the court to find that whether or not the trucker was our agent he was an independent contractor selected by us to return the goods and that we are therefore responsible for his negligence." Shortly thereafter, Transamerica settled the case.

Recently, this Court has reaffirmed the three prima facie elements of indemnity that were outlined in *Williams v. Johnston,* 92 Idaho 292, 442 P.2d 178 (1968): "(1) an indemnity relationship, (2) actual liability of an indemnitee to the third party, and (3) a reasonable settlement amount." *Chenery v. Agri–Lines,* 115 Idaho 281, 284, 766 P.2d 751, 754 (1988). Here, the only question is whether the settlement was a reasonable one.

At the time the settlement was effected, there was a substantial risk that King would be found liable for the damage to the lathe because of the negligence of Widmark. Cadillac had alleged that the lathe was totally destroyed and not repairable. Mitchell, Transamerica's adjustor, had advised Transamerica that "it is the opinion of Western Appraisal that the [lathe] could be repaired for something in the area of $25,000, however, Cadillac has refused to consider repairs as it would then be a used machine, and they would not let their name be put on the machine." Although the lathe had been repaired and sold before King filed this action, at the time of the settlement with Cadillac, King and Transamerica could have believed that King would be found liable for the full value of the lathe. This indicates to us that the settlement may have been reasonable, since the invoice price of the lathe was $51,-814.50. However, these are decisions that the trial court, and not this Court, should make. Since the trial court focused on the repair cost, rather than on a reasonable settlement amount as the measure of damages, we reverse the award of $25,000.00 for damages to the lathe and remand the case to the trial court for a determination of the reasonableness of the settlement.

## VI.

## CONCLUSION.

We affirm the summary judgments of the trial court establishing the liability of Widmark for damages to the ironworker and the lathe. We reverse the summary judgment of the trial court awarding $32,-100.00 in damages to Transamerica and King and remand these issues to the trial court for further proceedings consistent with our opinion.

Because of the mixed result, we award no costs.

No attorney fees on appeal.

SHEPARD, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.