**GREAT NORTHERN RAILWAY COMPANY, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 1999.

United States District Court
D. Montana,
Havre-Glasgow Division.

Sept. 29, 1960.

Weir, Gough & Booth, and Ward A. Shanahan, Helena, Mont., and John J. Burke, Helena, Mont., for plaintiff.

Krest Cyr, U. S. Atty., and Jack H. Bookey, Asst. U. S. Atty., Butte, Mont., for defendant.

JAMESON, District Judge.

Plaintiff seeks indemnity from defendant, pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § 1346, for a payment made to Elliott Richie as a result of an accident on December 22, 1955. Richie, while standing on plaintiff's depot premises at Rudyard, Montana, was struck by a mail pouch thrown by Forrest J. McNeil, a postal transportation clerk employed by the defendant, from one of plaintiff's westbound trains as it passed through Rudyard, at approximately 10:40 A.M., while traveling at a speed of 65 miles an hour or 95.3 feet per second. Richie was on the depot premises in connection with his employer's business with plaintiff and accordingly was a business invitee of the plaintiff. Richie instituted suit against plaintiff. Plaintiff requested defendant to defend, and defendant refused. Plaintiff then effected a compromise settlement with Richie for $4,000 and incurred costs in the sum of $156.38, which it seeks to recover from the defendant.

When McNeil dispatched the mail pouch which struck Richie[1], he was operating under a mimeographed booklet dated February 1, 1951, furnished him by the district superintendent of postal transportation service, which showed the dispatch point at Rudyard as 50 feet *east* of the depot. A subsequent order, contained in a district order book dated September 12, 1951, provided that effective on that date the point of dispatch was changed to read "50 feet *west* of depot". It is conceded that the dispatch of the mail pouch was erroneously made at a point east of the depot.

Before entering the station, Richie had parked his pickup truck, facing south, in

1. McNeil's usual assignment was to work Washington papers between Shelby and Glasgow, Montana, but on this occasion he was handling the local dispatch between Havre and Shelby, as he had done on some prior occasions.

a parking lot, some 15 to 28 feet east of the depot platform. He discussed with Lloyd W. Klepper, plaintiff's station agent at Rudyard, the spotting of a car for unloading. About the time they completed their conversation they heard the whistle of the approaching train. Richie stated in a deposition in another case[2] that Klepper went out of the station and turned west and he (Richie) turned to the east. He did not recall any conversation with Klepper. Klepper, however, testified that, "I went out on the platform with him with the intention of indicating just exactly where the car was going to be placed, when at that time I heard a train whistle and observed this delayed Train No. 1 approaching close. So I placed a hand on his shoulder and shouted in his ear to get in the clear and then proceeded west to observe the dispatch area if there was anyone present over there".[3]

Richie went to the east toward his parked truck and was standing close to the truck near the door opposite the driver's side when he was struck by the mail pouch. The distance between the front of the truck and the railroad track was variously estimated at 25 to 35 feet. Klepper testified that he went to the west "to check the expected possibility of a passer-by being hit in the dispatch area

and also as a substitute for the mail carrier who was unable to come across because of the proximity of the train, to see that the pouch was properly picked up".[4]

There is evidence that the mail pouch had been dispatched at the wrong point on other occasions. Klepper testified on direct examination that during the time he had been station agent at Rudyard (approximately three years eight months at the time of the accident), the mail pouch to his knowledge had been dispatched at the wrong point on four other occasions,[5] but in no case had the dispatch been made at the point where Richie was struck. Klepper admitted on cross examination that the mail pouch might have been dispatched at the wrong point on other occasions. In an affidavit, received in evidence as an exhibit without objection, the postmaster at Rudyard stated that the specified place for the pouch to be thrown off was west of the depot, but that "once in a while, possibly once or twice a month, the pouch is thrown off east of the depot instead of west"; and that "some of the improper dispatches can be attributed to poor visibility caused by snow kicked up by the train".[6]

Defendant contends that the injury sustained by Richie was proximately caused by the concurrent negligence of

---

2. Richie was deceased at the time of trial. His deposition in the action he instituted against plaintiff was received in evidence as an exhibit, without objection.

3. Klepper testified further:

"Q. Will you state whether or not you sent Richie into the parking lot east of the station? A. I did more or less nudge him in that direction and advise him to get in the clear, and indicated as best I could in the short time available to proceed to a place of safety over in that area, that is away from the immediate platforms and rails."

In a statement taken by plaintiff from Klepper on December 27, 1955, he said, "I make a practice to go to the west end of the depot to watch the train as it goes by. On leaving I told Richie to get in the clear, but I don't know if he heard me or not as there was so much noise from the whistle."

4. Westbound trains picked up mail from a crane about 186 feet west of the station.

5. On one occasion, during a storm, the pouch struck a stand used to handle train orders, "which at the time was the exact center of the depot"; on another occasion the pouch struck Klepper "in the feet" as he stepped out of the door; on the third occasion the pouch landed in the same area and cracked a window; and on the fourth occasion the pouch was dropped considerably to the east, caught under the train and was torn up.

6. Defendant's counsel developed on cross examination of Newell Gough, one of plaintiff's attorneys, that plaintiff had in its file a statement of Joseph Souza, an elevator employee, in which Souza stated, " * * * will say that the vast majority of the time the sacks were thrown off near the west end of the depot. There was one time I can recall and it was a

plaintiff and defendant, and that accordingly plaintiff has no right to either contribution or indemnity. Plaintiff contends that the injury was caused by the sole negligence of the defendant, or if not, that any negligence of the plaintiff was remote, passive and secondary, while that of the defendant was primary, active and affirmative, and that in either event plaintiff is entitled to indemnity for the amount paid in settlement.

■ In the absence of any Montana cases in point, I assume that the Montana court would follow the common-law rule that joint tortfeasors are not entitled to contribution from each other. "In the absence of legislation, courts exercising a common-law jurisdiction have generally held that they cannot on their own initiative create an enforceable right of contribution as between joint tortfeasors". Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 279, 96 L.Ed. 318. The common-law rule was followed by the California court in Forsythe v. Los Angeles Railway Co., 1906, 149 Cal. 572, 87 P. 24. If the parties here were in pari delicto, there is no right of recovery on the part of the plaintiff.[7]

■ Where the parties are not in pari delicto, and an injury results from the act of one party whose negligence is the primary, active and proximate cause of the injury, and another party, who is not negligent or whose negligence is remote, passive and secondary, is nevertheless exposed to liability by the acts of the first party, the first party may be liable to the second party for the full amount of damages incurred by such acts. This exception to the general rule was recognized in Union Stock Yards Co. of Omaha v. Chicago, B. & Q. R. Co., 1905, 196 U. S. 217, 25 S.Ct. 226, 49 L.Ed. 453, where the Court said:

"Coming to the very question to be determined here, the general principle of law is well settled that one of several wrongdoers cannot recover against another wrongdoer, although he may have been compelled to pay all the damages for the wrong done. In many instances, however, cases have been taken out of this general rule, and it has been held inoperative in order that the ultimate loss may be visited upon the principal wrongdoer, who is made to respond for all the damages, where one less culpable, although legally liable to third persons, may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done." 196 U.S. at page 224, 25 S. Ct. at page 227.[8]

A leading case upholding the right of indemnity is Washington Gaslight Co. v. District of Columbia, 1896, 161 U.S. 316, 16 S.Ct. 564, 568, 40 L.Ed. 712, where a resident of the City of Washington, D. C. had been injured by an open gas box placed and maintained on the sidewalk by the gas company. The District of Columbia was permitted to recover from

couple of years ago that I noticed a mail sack being thrown off at the east end of the depot."; and also a statement of Albert Bedou that, " * * * after these instructions were issued there were very few times that mail sacks have landed east of the depot."

7. This rule is stated in Restatement, Restitution, § 102: "Where two persons acting independently or jointly, have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is not entitled to contribution from the other."

8. See also Restatement, Restitution, § 95: "Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

the gas company,[9] and the court reviewed cases which qualified "within just limits the rigor of the rule which forbids recourse between wrongdoers". The court quoted with approval from the case of Inhabitants of Lowell v. Boston & L. R. Corp., 23 Pick. 24, 32, 40 Mass. 24, 34 Am.Dec. 33, as follows:

"Our law, however, does not in every case disallow an action by one wrongdoer against another to recover damages incurred in consequence of their joint offense. The rule is, *'In pari delicto potior est conditio defendentis.'* If the parties are not equally criminal, the principal delinquent may be held responsible to his codelinquent for damages incurred by their joint offense. In respect to offenses in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offense is merely *malum prohibitum,* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers." [10]

The rule permitting indemnity against the "principal offender" has been recognized in a variety of circumstances, and varied terminology has been used in describing the nature of the relationship of the respective parties. This was well expressed in United States v. Savage Truck Line, Inc., 4 Cir., 1953, 209 F.2d 442, 446, 44 A.L.R.2d 984, where the court said: "In the infinite variety of circumstances where indemnity has been sought the courts have used various terms to distinguish between the grade of fault attributable to the participating wrongdoers so as to justify the imposition of the entire loss on the one who is regarded as the principal offender. The acts of the parties are variously contrasted as positive or negative * * * and as active and passive [11] * * * or as primary and secondary * * *; and sometimes one party is said to have been merely constructively liable and therefore entitled to indemnity from the actual wrongdoer * * * Whatever the terminology, the inquiry is always whether the difference in the gravity of the faults of the participants is so great as to throw the whole loss upon one. In such event there is contribution in the extreme form of indemnity." [12]

9. For other cases recognizing the rule of indemnity where municipalities have been held responsible for injuries to persons lawfully using the streets because of defects in the streets or sidewalk caused by the negligent or active fault of a property owner, see City of San Francisco v. Ho Sing, Cal.App.1958, 323 P.2d 1054, 1056, where, after citing numerous cases, the California court concluded that the rule has been followed "with such unanimity of decisions in the other courts of this country we must accept it as the prevailing rule at common law".

10. This statement was quoted with approval in Snohomish County v. Great Northern Ry. Co., 9 Cir., 1942, 130 F.2d 996, 1000, in affirming a judgment in favor of the railway company for payments made to its passengers and employees for injuries sustained when one of plaintiff's passenger trains was wrecked as a result of the negligent construction of a county road, the lower court having found that the railway company was guilty of passive negligence, but that the parties were not in pari delicto.

11. See Banks v. Central Hudson Gas & Electric Corp., 2 Cir., 1955, 224 F.2d 631, 634, where the court said: "This doctrine is often referred to as 'active' and 'passive' negligence. A tort-feasor whose negligence is only 'passive' can recover from a co-tort-feasor if the latter is guilty of 'active' negligence. * * * It is the function of the jury to determine whether both defendants were guilty of negligence contributory to the harm: if so, to determine whether they were equally at fault in which event no right of indemnity arises. If, however, the jury finds that the fault of the third-party plaintiff was passive only and that the fault of the impleaded defendant was the primary cause of the harm, the latter will be held to indemnify the former in an action over."

12. See also 42 C.J.S. Indemnity § 27b, p. 606.

In Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902; 20 A.L.R.2d 695, the court considered at length the common-law rules relative to indemnity where the negligence of one party is the active, direct, proximate and primary cause of the injury, in affirming a judgment in favor of the railroad for payment made by the railroad to one of its employees for injury sustained by the active negligence of the defendant. In that case there was an express contract of indemnity and the case accordingly is distinguishable, but Judge Pope indicated that the railroad "would have been entitled to no less, under the rule in the Astoria case [13] * * * even in the absence of a contract". 183 F.2d at page 911.

In Chicago, Rock Island & Pacific Ry. Co. v. United States, 7 Cir., 1955, 220 F. 2d 939, 941, plaintiff's employee was struck by a mail pouch thrown from a postal car of a passing train. The trial court found that both the plaintiff and its employee were "in the exercise of due care and caution in their behalf"; and that the negligence of the Government's employee "was the active, direct, proximate and primary cause of the injury to plaintiff's employee * * * *". Plaintiff was permitted to recover for the payment made to its employee in settlement of the employee's claim asserted under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

In Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 1953, 201 F.2d 408, 37 A.L.R.2d 1399, plaintiff's employee was injured when struck by timber which fell from a bridge being reconstructed by the defendant. In affirming a judgment in favor of the railway company, the court quoted with approval from the opinion of the trial court in Lawrence v. Great Northern Ry. Co., D.C., 109 F.Supp. 552, 555, where the court had said in part: " * * * where the parties are not in *pari delicto* and the injury results from the acts of one whose negligence * * * exposes another to liability, the former is liable to the latter in the full amount of the damages incurred by such act. * * * Here, these parties were not in *pari delicto*. * * * Its (railway company's) liability arose because of the non-delegable duty which rested upon it to exercise reasonable care to furnish Lawrence a safe place to work. Any negligence attributed to it so as to render it liable to Lawrence arose by the wrongdoing of those in charge of the construction of this bridge. The primary duty rested upon Waylander-Peterson Company to perform its work on the bridge so as not to endanger the workmen who were required to work in proximity thereto. Its neglect was the primary, active cause of Lawrence's injuries. The railroad company's negligence, as between the parties, was secondary and passive." 201 F. 2d at page 416.[14]

Defendant points out correctly, that most of the cases sustaining the right of indemnity of a railroad against the United States for the negligence of an employee of the Government involve an injury to an employee of the railroad asserted under the Federal Employers' Liability Act. Defendant argues that in these cases the railroad was guilty of constructive fault only by reason of its legal relationship to its employee to whom it owed a positive legal duty, and that the same rule should not apply in the absence of such a relationship. While there are cases which tend to support defendant's position, it does not appear from the cases cited supra that the rule permitting indemnity is so restricted.

It is true that Richie was a business invitee rather than an employee of plaintiff. Under Montana law, a landowner has a duty to a business invitee

13. City of Astoria v. Astoria & Columbia River R. Co., 67 Or. 538, 136 P. 645, 49 L.R.A.,N.S., 404.

14. See also St. Louis-San Francisco Ry. Co. v. United States, 5 Cir., 1951, 187 F. 2d 925, and cases there cited; Chicago, Rock Island & Pacific R. Co. v. United States, D.C.D.Kan.1955, 129 F.Supp. 637.

to use ordinary care to have the premises reasonably safe or to warn the invitee of any hidden or lurking danger therein.[15] In my opinion the right of indemnity in a proper case may apply to payments to business invitees as well as those to employees. The right of indemnity here depends primarily upon whether the plaintiff's employee Klepper was negligent, and whether his negligence, if any, was a contributing, proximate cause of the accident.

Defendant contends that Klepper was negligent in failing to warn Richie, knowing that a mail pouch might be dropped in the area where Richie stood. There is a conflict in the evidence as to whether Richie was warned by Klepper. It is my conclusion that Klepper attempted to warn Richie, but that due to the noise of the train, it is doubtful whether Richie heard Klepper's warning. But this is immaterial. It is undisputed that Richie did in fact go to the area to which Klepper attempted to direct him. Had Richie heard and heeded the warning, he would have gone to the same place, i. e. the parking area east of the platform where his truck was parked.

Was Klepper negligent in sending Richie to this area or failing to give him other and more specific directions and warning? While Klepper had knowledge of four other occasions when the mail pouch was dispatched erroneously, in no instance had the pouch been thrown into the parking area where Richie was sent. Nor is there any other evidence that the pouch had theretofore been thrown into that area. Accordingly there was no reason for Klepper to anticipate that the pouch might wrongfully be thrown into the parking area east of the depot. It is my conclusion that Klepper acted as a reasonably prudent person under the circumstances and that the accident was not caused by any act of negligence on his part.

Plaintiff relies strongly upon the case of United States v. Acord, 10 Cir., 1954, 209 F.2d 709, 711, certiorari denied 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115, where a business invitee of the railroad company had been struck by a mail pouch, and the court of appeals reversed a judgment entered by the district court in favor of the railroad and against the United States. The court recital of the findings of the trial court include the following:

"that the station agent for the Railroad Company knew that a mail pouch would be thrown from the train and that it might be dispatched in the area where Acord was standing and that the agent should have warned Acord of the danger; that had the agent warned Acord of the danger, he could have protected himself and avoided the accident; and that the failure of the Railroad Company to warn Acord 'proximately contributed to the accident and his injuries.' "

It is true, as defendant contends, that the court concluded in Acord that the right of indemnity should be limited to those cases where one person is guilty of the act or omission which causes the injury and the other is guilty of only constructive fault because of his legal relationship to the person guilty of the act or omission or his positive legal duty to the person injured. The primary basis of the court's holding that there was no liability on the part of the United States, however, was its conclusion that under the facts in that case the parties were concurrent and joint tortfeasors.[16]

15. Cassady v. City of Billings, 1959, 135 Mont. 390, 340 P.2d 509, 510, and cases there cited.

16. On this point the court said: "Here, while the act of the mail clerk was one of commission and the act of the agent of the Railroad Company was one of omission, the agent of the Railroad Company knew that the pouch would be thrown from the train and might be dispatched in the area where Acord was standing and the failure of the agent of the Railroad Company to warn Acord of the danger prevented Acord from avoiding the accident and proximately contributed to the accident and Acord's injuries. Both the mail clerk and the

The finding of the lower court in Acord, that the railroad employee was negligent and that his negligence proximately contributed to the accident, distinguishes Acord from the instant case.

In view of the finding that Klepper was not negligent, was the plaintiff justified in effecting the settlement with Richie? The settlement was made by Newell Gough, an attorney for plaintiff for 25 years, with extensive experience in the handling of personal injury actions and settlements on behalf of the railroad. The reasons for effecting the settlement were summarized by Mr. Gough as follows: "Well, we were in this situation. Under my opinion, in which others agreed with me as to the legal liability of the railroad company in the particular case, we had first these questions which would in my opinion have been submitted to the jury for determination. First, was the railway company in any way responsible or liable for a negligent act which in any way contributed to this particular injury in this case. It was our opinion it did not, but from the facts as I understood them I was certain there would be a factual question, resulting from the evidence which would go to the jury for submission. There was also the question, and we had plead it as an affirmative defense, that the sole responsibility for this accident and the resulting action was the negligence of the United States Government which was again a question of fact which we were presenting to the jury for final determination; and, of course, along with it would be the question of the injuries sustained by the injured party."

■ Richie had instituted suit against plaintiff for some $85,000, alleging permanent injuries. A claim was also asserted against plaintiff by an insurance company under its right of subrogation by reason of payments to Richie under the Montana Workmen's Compensation Act, R.C.M.1947, § 92–101 et seq. Richie was examined by several doctors on behalf of both plaintiff [17] and the insurance company. While many of the doctors were of the opinion that Richie was exaggerating his injuries, there was evidence of permanent ear damage, and at the time Richie's deposition was taken some three months after the accident, he was wearing a neck brace recommended by an orthopedic surgeon. Richie complained in particular of dizziness and fainting spells. Prior to the settlement Richie died as the result of injuries sustained in an automobile accident. The attorneys for the estate claimed that the dizziness or fainting condition caused the accident resulting in his death. The sum of $4,000.00 under the circumstances was a reasonable settlement.

■ Is plaintiff precluded from recovery for a payment voluntarily made in view of the finding that Klepper was not negligent? At the time plaintiff made the settlement with Richie, it did not have the benefit of the court's finding that Klepper was not negligent. As the court said in Chicago, Rock Island & Pacific Ry. Co. v. United States, supra, "It was required at that time to use its foresight rather than its hindsight in evaluating the situation relative to its probable liability." 220 F.2d at page 941. Defendant having refused the tendered defense of the action, plaintiff was justified in effecting a fair and reasonable settlement without resisting the litigation instituted by Richie to the point of a jury or directed verdict.[18]

---

agent of the Railroad Company owed a like duty to Acord. Their failure to perform their respective duties concurred and contributed to proximately cause the accident and the injuries to Acord. They were concurrent and joint tort-feasors. Both were primarily liable." 209 F.2d at page 716.

17. Dr. G. A. Jestrab of Havre, Montana, who examined Richie on April 2, 1956,

made the following diagnosis: "1. Wrenched back and neck, traumatic. 2. Deafness of left ear-possible dislocated osciles of internal ear. 3. Mild brain concussion."

18. See also United States v. Chicago, R. I. & P. Ry. Co., 10 Cir., 1948, 171 F.2d 377; Chicago, Rock Island & Pacific Ry. Co. v. United States, supra; 42 C.J.S. Indemnity § 25, p. 603; Cf. St.

In any action for indemnity, the amount recoverable is limited to the amount actually paid. Where, however, the indemnitee has notice of the suit and an opportunity to defend, ordinarily it is liable for costs and expenses incurred in addition to the amount paid in settlement.[19] Plaintiff here seeks to recover $156.38 costs and expenses incurred in connection with the defense of the action instituted by Richie. Defendant, relying upon Title 28 U.S.C.A. § 2412 [20] contends that costs may not be recovered against the United States in the absence of statutory authorization and that here no authorization has been made. Plaintiff argues that this section is not applicable and that plaintiff was required to incur the expenses in the same manner as it was required to pay the $4,000 in settlement. Neither side has cited any authority.

Of the total sum of $156.38 for which indemnity is sought, the sum of $60.68 is represented by travel and telephone costs incurred by plaintiff's counsel and the sum of $50 for expense incurred in bringing Richie to Helena for a physical examination, leaving $45.70 as costs which would be recoverable by the prevailing party in any action where costs are allowed. Had these costs been incurred in this action they would have been recoverable under Section 2412(c). The evidence is insufficient to justify an allowance of the remaining items. Plaintiff is entitled to recover the sum of $45.70 in addition to the sum of $4,000 paid in settlement.

Pursuant to Rule 11 of the local rules of court, plaintiff will prepare, serve and file proposed findings of fact and conclusions of law in accordance with this decision, and also prepare, serve and file a draft of judgment.

Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 1905, 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712.

19. See 42 C.J.S. Indemnity § 24, p. 602 and cases there cited.

20. § 2412 reads in pertinent part: "(a) The United States shall be liable for

fees and costs only when such liability is expressly provided for by act of Congress * * * (c) In an action under subsection (b) of section 1346 of this title, costs shall be allowed in all courts to the successful claimant, but such costs shall not include attorneys' fees."