THE WASHINGTON WATER POWER COMPANY, A COR-
PORATION AND EBASCO SERVICES, INC., A CORPORATION, PLAIN-
TIFFS AND RESPONDENTS, *v.* MORGAN ELECTRIC COM-
PANY, A CORPORATION, AND GENERAL INSURANCE COMPANY
OF AMERICA, A CORPORATION, DEFENDANTS AND APPELLANTS.

No. 11403.

Submitted September 23, 1968. Decided November 15, 1968.

448 P.2d 683.

Anderson, Symmes, Forbes, Peete & Brown, Weymouth D. Symmes (argued), Billings, for defendants and appellants.

Hughes & Bennett, George T. Bennett (argued), Helena, for defendants and respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Plaintiffs recovered judgment against defendants in the amount of $19,414.01 covering expenditures for a compromise settlement and attorney's fees in a wrongful death action. The judgment was based on breach of an indemnity agreement in a construction contract which was secured by a performance bond. The case was tried in the district court of Lewis and Clark County before the Honorable Lester H. Loble, district judge, without a jury.

The principal question upon this appeal is the liability of the defendants to indemnify the plaintiffs under the circumstances disclosed here. The trial judge held the defendants liable under the construction contract and performance bond. We affirm.

This case arise out of events that occurred during the construction of the Noxon Rapids dam on the Clark Fork river in Sanders County. Plaintiff Washington Water Power Company, hereafter referred to as WWP, controlled a site on which it wished to construct a hydroelectric dam; it hired the other plaintiff, Ebasco Services, Inc., hereafter called Ebasco, as its agent and consulting engineer on the project. WWP and Ebasco engaged defendant Morgan Electric Company, hereafter called Morgan, as an electrical contractor on the project under a written contract. The other defendant, General Insurance Company of America, hereafter called General, furnished Morgan's performance bond on the electrical contract.

The electrical contract between WWP and Ebasco, on the one hand, and Morgan, on the other, provided, among other things: (1) that Morgan was solely and exclusively responsible for the operation and maintenance of a gantry crane furnished for its use by WWP; (2) that Morgan must furnish skilled personnel to operate this crane, must operate it in a safe and workmanlike manner, must operate it at its own risk, and must hold WWP harmless and indemnified in every respect for injuries and damages arising out of its operation, unless occasioned by WWP, its agents, or employees; (3) that Morgan was solely responsible for safety on the job, but must comply with any order of Ebasco to increase such safety in any of Morgan's methods, materials, or equipment used on the project; and (4) that Morgan would defend WWP and save it harmless from any claims or actions against it arising out of or incidental to performance of the electrical contract, except for injuries and damages caused by the negligence of WWP, its agents, or employees.

The performance bond on the electrical contract in which Morgan was principal and General was surety, provided in part: (1) that Morgan and General would satisfy all claims against WWP for damages caused by the negligence of Morgan employees, and (2) that Morgan and General would fully indemnify WWP and save it harmless against all cost and damage it might suffer by reason of default in performance of any of the obligations of Morgan under its contract and fully reimburse WWP for all outlay and expense WWP might incur in making good such default.

On June 24, 1959, an accident occured on the project wherein Glen E. Houts, a Morgan employee, was killed. Two employees of Morgan were operating the gantry crane, a huge overhead structure supported by four legs at the end of which were wheels that run on rails. Lee Hanson, the crane operator, was in the overhead cab of the crane some 30 feet

above the rails. Hanson operated the controls of the crane in response to signals from Luther Barnes, the rigger, who was stationed at "ground level".

C. W. Platz, an electrical inspector for Ebasco, directed Barnes to get one of the front wheels on the crane back into proper aligment as is was "cocked" on the rail in an abnormal operating position. He also told Barnes to be careful not to chip the concrete in a wall at the end of the rails, and to put something against a steel plate imbedded in the wall. Platz then moved over to the other side of the crane where he could make marks on the opposite rail to determine when the front wheels had been brought into proper alignment. Platz did not thereafter observe the actions of Barnes in accomplishing the alignment.

Barnes selected a "four by four" or a "six by six" hardwood timber lying nearby and directed Houts, another Morgan employee, to hold it against the steel plate imbedded in the concrete wall. Barnes directed Hanson by hand signals and shouting to strike the timber with the front wheel of the crane in an effort to align it. The first striking was without result. Barnes then directed Hanson "to come a little harder" with the front wheel of the crane against the timber. This broke the timber resulting in Houts' death.

At the time of his death Houts left his widow and child surviving him. They received compensation for his death under the provisions of the Montana Workmen's Compensation Act.

Thereafter Houts' widow, as executrix of his estate, filed a wrongful death action against WWP, Ebasco, and Morrison-Knutson Company, the general contractor on the project. She alleged negligence on the part of Morgan employees in five particulars, negligence on the part of Morrison-Knutson in two particulars, and negligence by Ebasco in ordering Houts in a dangerous and perilous position, placing Houts in an unsafe place to work, instructing the work to be done in a

dangerous and unworkmanlike manner, and in failure to provide timely and adequate medical services.

WWP advised Morgan of the filing of this action, that it would hold Morgan liable under the indemnity agreement, and tendered defense of the action to Morgan. Morgan undertook the defense for several months but subsequently withdrew and refused to further defend, apparently on the basis of information contained in the deposition of Luther Barnes suggesting negligence by Platz, an Ebasco employee.

WWP and Ebasco, or more properly their liability insurers, then undertook the defense of the wrongful death action. Shortly before trial they notified Morgan that they intended to settle the case and demanded that Morgan either participate in the settlement or defend the action. Morgan refused to do either. The case was settled on behalf of WWP and Ebasco for $16,500 which their liability insurers paid together with attorneys' fees for the services of their attorneys in the case.

Thereafter the liability insurers of WWP and Ebasco assigned to them all claims the insurers had by way of subrogation arising out of any breach of the indemnity provisions of the electrical contract and the performance bond.

WWP and Ebasco then filed the instant case against Morgan and General to recover the compromise settlement in the wrongful death action ($16,500), the attorneys' fees expended in defending and settling that action ($2,914.01), interest and costs. The case was submitted to the district court for decision on the basis of an agreed statement of facts, the deposition of Platz, the testimony of Barnes, and the court files in the wrongful death action and the instant case.

The district court entered findings of fact and conclusions of law favorable to WWP and Ebasco together with judgment in the full amount claimed by them. This judgment was predicated upon: (1) breach of the indemnity provisions

of the electrical contract and performance bond, (2) breach of the electrical contract and performance bond consisting of Morgan's failure to operate the gantry crane in a proper and safe manner and failure to employ skilled persons to operate it. This appeal is from that judgment.

The issues assigned for review upon this appeal can be summarized in the following manner: (1) Are the claims of WWP and Ebasco covered by the terms of the indemnity agreement? (2) Are WWP and Ebasco, as assignees for collection of the claims of their liability insurers, entitled to judgment predicated upon an indemnity agreement to which their liability insurers were not parties? (3) Sufficiency of proof of the amount of damages.

At the outset it should be noted that if Morgan breached the provisions of the electrical contract, General is liable under the performance bond. It is likewise clear that the rights of WWP and Ebasco are identical, Ebasco being the agent of WWP and the acts or omissions of Ebasco employees being chargeable to WWP.

Directing our attention to the first issue presented for review, we quote verbatim the basic indemnity agreement contained in the electrical contract:

"C-21 INDEMNIFICATION

"Except in cases of injuries or damages to persons or property as may be caused by the negligence of [WWP], [Morgan] shall save harmless [WWP] from all claims and actions of any kind arising from or incidental to the performance of this Contract and expenses incidental to such claims and actions and shall assume without expense to [WWP] the defense of any such claims or actions.

"In the event that any arrangement is made whereby employees of [WWP] are used by [Morgan], they shall, while engaged on this work be considered, for all purposes, as employees, servants and agents of [Morgan] and not of [WWP], irrespective of who pays them. [Morgan] shall indemnify

[WWP] and hold it harmless from and against any and all loss, cost, damage and expense, by reason of any act or omission of any employee, servant or agent of [Morgan], including those, if any, originally employed by [WWP] and utilized by [Morgan]. [Morgan] further agrees to defend, at [Morgan's] own expense, any suit or suits that may be brought against [WWP], by reason of any act or omission of any employee, servant, or agent of [Morgan] including those, if any, originally employed by [WWP] and utilized by [Morgan]." (Bracketed identifications substituted.)

There is a similar indemnification provision in the electrical contract specifically covering operation of the gantry crane.

Morgan and General contend that the claims of WWP and Ebasco in the instant case are excluded by the terms of the indemnity agreement. The basis for this contention is that the main thrust of the wrongful death complaint is directed at the negligence of an Ebasco employee, Platz, for which both WWP and Ebasco are chargeable.

We do not so construe the complaint in the wrongful death action. Negligence is charged against Morgan employees and against Morrison-Knutson Company as well as against WWP and Ebasco. In any event this is not of controlling significance. "Shotgun" allegations of negligence covering the entire spectrum of the imagination are a poor yardstick for measuring liability under an indemnity agreement. The correct standard for measuring such liability is the facts of the accident which establish negligence rather than mere allegations thereof.

What are the facts concerning the negligence of WWP and Ebasco? Initially it must be recognized that any negligence imputed vicariously to WWP and Ebasco by reason of ownership of the gantry crane, as occupier of the land and site on which the construction was being carried on, or as owner of the dam, which arose out of acts or omissions of employees of Morgan or others creates a right of indemnity in WWP

and Ebasco under the terms of the indemnity agreement. Thus the only basis for denial of indemnity in the instant case is establishing negligence on the part of Platz, an Ebasco employee.

Considering the evidence in the light most favorable to Morgan and General, Platz directed Morgan employees to realign the front wheel of the crane, to be careful and not chip the concrete in the wall, and to put something against the steel plate in the wall during alignment. Beyond this Platz did nothing except go over to the opposite rail to mark it so that it could be determined when realignment had been accomplished. Platz did not supervise the alignment, direct operations of the crane, select the timber for use against the steel plate, involve Houts in the job, nor determine the details of how the alignment was to be accomplished. This was all done by Morgan employees, principally Barnes.

By the terms of the electrical contract, Morgan was solely responsible for operation and maintenance of the crane, Morgan employees were responsible for operating it, and Morgan was solely and exclusively responsible for safety on the job. Ebasco was expected to direct that safety measures be taken, such as alignment of the wheel of the crane from its "cocked" position on the rail. The events leading to the death of Houts were performed on this basis.

In short, the negligence, if any, was that of Morgan employees, not Platz. The district court so found in Conclusion of Law V:

"That the injuries to and death of Glen E. Houts, and the suit brought by his widow as Executrix of the Estate of Glen E. Houts, deceased, based upon such injuries and death, were solely and proximately the result of and arose out of the operation of said gantry crane on the said 24th day of June, 1959, by Morgan Electric Company and its said employees, within the meaning of said written contract."

Morgan argues that this is a conclusion of law,

not a finding of fact, and the Supreme Court is not bound by such conclusion. This begs the question. Irrespective of whether this is properly a finding of fact or a conclusion of law, it is fully supported both by the evidence and the law. Such being the case, we will not disturb it upon appeal.

For the foregoing reasons, the claims of WWP and Ebasco in the instant case are covered by the terms of the indemnity agreement.

The second issue assigned for review is whether WWP and Ebasco, as assignees for collection of the claims of their liability insurers, are entitled to judgment predicated upon an indemnity agreement and performance bond to which they were not parties.

A brief factual background is desirable at this point. After the liability insurers of WWP and Ebasco paid the agreed compromise settlement and attorneys' fees in the wrongful death action, these liability insurers assigned any claims they had against Morgan and General by way of subrogation to WWP and Ebasco for collection. WWP and Ebasco then filed the instant case in their own name, as assignees for collection, without joining their liability insurers. Thus, the rights of WWP and Ebasco to judgment in the instant case are predicated upon the rights of their liability insurers.

Morgan and General contend that WWP and Ebasco have no right to judgment herein on two grounds: (1) That the liability insurers of WWP and Ebasco are the real parties in interest who must prosecute the instant case, (2) that the liability insurers of WWP and Ebasco, upon payment of the wrongful death claim and attorneys' fees, did not become subrogated to the contractual rights of WWP and Ebasco against Morgan and General.

■ ■ An assignor for collection of another's claim against a third party can maintain an action in its own name against such third party, legal title to the claim being the only requirement to constitute the assignee the real party in interest.

Rae v. Cameron et al., 112 Mont. 159, 114 P.2d 1060. This is the proper result under Rule 17(a) of the Federal Rules of Civil Procedure and the majority rule under state statutes patterned after this federal rule. 3A Moore's Federal Practice, sec. 17.09, p. 276. The rationale behind this rule is that the assignee has the substantive right sought to be enforced. Moore's Federal Practice, supra. We hold, therefore, that WWP and Ebasco, in the instant case, are the real parties in interest and entitled to sue in their own name under Rule 17(a), M.R.Civ.P.

We now address ourselves to the problem of determining whether the liability insurers of WWP and Ebasco succeeded to the latter's contractual rights under the indemnity agreement and performance bond against Morgan and General. As a general rule, where an insured has entered into a contract with third persons by the terms of which such third persons are liable to the insured for a given loss or damages, the insurer, upon payment of the loss or damage, becomes subrogated to the rights of the insured against such third party under the contract. Couch on Insurance 2d, Sec. 61:144, p. 317 and cases therein cited. This principle applies equally to losses to the insured occasioned by breach of such indemnity provisions. Couch on Insurance 2d, Sec. 61:144, p. 318.

We see no reason why this principle should not be applied to the instant case. Broadly speaking, this case requires determination as to which of two insurers should ultimately bear the loss occasioned by settlement of the wrongful death claim. Where, as here, the loss was occasioned by Morgan, the sole responsibility and risk in the maintenance and operation of the crane was Morgan's, the sole responsibility for safety on the job was Morgan's, and where Morgan agreed to indemnify and defend for loss occasioned by its own employees, We see no reason why the liability insurers of WWP and Ebasco should ultimately bear the loss rather than Morgan's

insurer. The equities here strongly preponderate in favor of WWP's and Ebasco's insurers.

Morgan places great reliance on the case of Patent Scaffolding Co. v. William Simpson Construction Co., Cal.App., 64 Cal.Rptr. 187, as supporting the principle that an insurer is not entitled to enforce the contractual rights of his insured against a third person. This case is clearly distinguishable on both the facts and the law. In *Patent* the court denied recovery to a subcontractor's fire insurance company who paid a fire loss on the insured's equipment on the job site and who sought indemnity against the general contractor for breach of a contract provision requiring the general contractor to insure the subcontractor's equipment against loss by fire. The distinguishing features there were that the fire was not caused by the general contractor, there was no express indemnity agreement, and that breach of the agreement to insure by the contractor was not the proximate cause of the loss. As these are neither the facts nor the law in the instant case, the exception to the general rule heretofore set out that is illustrated by the *Patent* case is inapplicable.

We hold, therefore, that WWP and Ebasco are the real parties in interest here by virtue of the assignment, are entitled to sue in their own name, and that their liability insurers succeeded to their contractual rights against Morgan and General under the indemnity agreement and performance bond, which they in turn assigned back to WWP and Ebasco.

We pass now to the final issue for review, viz. sufficiency of the proof of damages to support the amount of the judgment. This issue is directed solely at proof of the reasonableness of the amount paid as a compromise settlement. While Morgan and General admit that $16,500 was actually paid as a compromise settlement, they contend that (1) there is a total failure of proof as to its reasonableness, and (2) the amount paid was unreasonable in that any liability of Morgan in the wrongful death action was foreclosed by the Work-

men's Compensation Act and any liability of WWP and Ebasco was due to the negligence of Platz which is not subject to indemnity.

■■ Where an insurer is obligated to defend, refuses to do so after notice, makes no protect against settlement by the insured, and fails, to show that the settlement was unreasonable, the insured is entitled to summary judgment as a matter of law against the insurer for the amount paid in good faith in settlement by the insured. Boutwell v. Employers' Liability Assurance Corp., 5 Cir., 175 F.2d 597. We perceive no reason for a different result here as between insurers for an indemnitor and indemnitee in the absence of proof that the settlement was unreasonable. Where, as here, the indemnitor and his insurer, after notice, refuse to defend the indemnitee; breach the indemnity agreement; refuse to participate in settlement negotiations or defend after demand; know the amount of the settlement and make no objections; the indemnitee is entitled to judgment as a matter of law in the amount of any settlement paid by it in good faith absent proof that the settlement is unreasonable.

But Morgan contends that it did make a showing that the settlement was unreasonable because the wrongful death action was barred against Morgan by coverage and payment under the Workmen's Compensation Act or else was based on the negligence of WWP and Ebasco which is not subject to indemnity.

A remarkably similar, although not identical, case has previously been decided by this Court adversely to the position now urged by Morgan and General. Western Const. Equipment Co. v. Mosby's, Inc., 146 Mont. 313, 406 P.2d 165. In that case a contractor leased a building tower from the owner and agreed to indemnify him against all injuries resulting from the use of the tower. One of the contractor's employees was injured in a fall from the tower, was paid workmen's compensation, and sued the owner. The lessee refused the defense,

the owner made a compromise settlement, and the owner sued the lessee to recover the amount of the compromise settlement and attorney's fees under the indemnity agreement. This Court allowed indemnity to the owner saying that the indemnity agreement covered the very eventuality that occurred, liability by reason of defective equipment.

In the instant case we have a similar situation. The indemnity agreement covered any liability imputed vicariously to WWP and Ebasco arising out of Morgan's operation of the gantry crane, operations on the job site, and conduct of the work. The accident was caused, the wrongful death action instituted, and the compromise settlement paid, solely as a result of the negligence of Morgan employees. The workmen's compensation coverage did not eliminate exposure of WWP and Ebasco to vicarious liability to the Houts' estate as owner of the crane, the dam, and land occupied at the job site. The indemnity agreement afforded this protection.

Additionally Morgan and General cannot refuse to defend, participate, or settle on the basis that they have no liability under the indemnity agreement, "lie in the weeds" and allow WWP and Ebasco to settle in good faith for a figure known to them in advance and not objected to, and then attack its reasonableness at the trial. They are estopped by their own conduct and implied acquiescence.

We have examined the other arguments raised by Morgan and General and find them to be without merit.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES ADAIR, JOHN C. HARRISON and CASTLES concur.