No. 80-68

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

———————————

ROGER J. McCARTY and JANICE L.
McCARTY and CAROL A. McCARTY,
Husband and wife,

Plaintiffs and Respondents,

vs.

LINCOLN GREEN, INC., a Montana
corporation, JAMES L. LEE, BERT
A. NELSON and BENITA NELSON,

Defendants, Third-Party Plaintiffs
and Respondents

vs.

RAY I. BERRYMAN and AMERICAN BONDING COMPANY,

Third-Party Defendants and Appellants.

———————————

Appeal from:  District Court of the Fourth Judicial District,
              In and for the County of Ravalli.
              Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellants:

        Jon E. Ellingson argued, Missoula, Montana

    For Respondents:

        Datsopoulos, MacDonald and Lind, Missoula, Montana
        Ronald MacDonald argued, Missoula, Montana

———————————

Submitted:  November 19, 1980

Decided:  DEC 19 1980

Filed:  DEC 19 1980

Thomas J. Kearney
                                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Ray I. Berryman, a real estate agent, as third party defendant, appeals from a judgment in the Fourth Judicial District Court, Missoula County, in favor of Lincoln Green, Inc., James L. Lee, Bert A. Nelson and Benita Nelson (Lincoln Green, Inc.), third party plaintiffs.

Berryman raises these issues for review:

(1)  A principal may not be held liable to a third party for negligence of its agent where there is no proof of the agent's liability to the third party.

(2)  The District Court erred in concluding that the principal's agent was negligent through his acts or omissions or by misrepresentation.

(3)  A real estate agent's negligence may not be established without proof that he failed to use the standard of care exercised ordinarily by real estate agents in the community.

(4)  The District Court improperly assessed damages against Berryman in the sum of $7,169.58, plus attorney's fees of $2,200.00.

After due consideration, we conclude that the judgment of the District Court should be affirmed.

In 1975, Lincoln Green, Inc. was offering for sale parcels of a subdivided ranch located in Ravalli County Montana.  As part of its selling effort, Lincoln Green, Inc. permitted licensed real estate agents to show various parcels which were for sale, without entering into a listing agreement with such real estate agents.  If a real estate agent showed any of the parcels and found a buyer, the agent who had shown the property presented a buy-sell agreement, executed by the proposed purchaser to Lincoln Green, Inc., for its approval and signature.

-2-

In 1975, Berryman presented to Lincoln Green, Inc., a buy-sell agreement executed by Roger J. McCarty, Janice L. McCarty, Robert J. McCarty and Carol McCarty (McCartys) as purchasers. On September 1, 1975, Lincoln Green, Inc. and McCartys entered into a contract for deed for the sale and purchase of a lot which was described in the contract as "the south one-half of Lot 32." The written contract contained in paragraph 18, language that the McCartys ". . . acknowledge that they have examined and inspected the property and are fully familiar and acquainted therewith and that they are entering into this Agreement based on their own examination and inspection, and that no representations of any kind concerning the property have been made by the Sellers or anyone acting on behalf of the Sellers."

One year after the execution of the contract for deed, the McCartys initiated legal action against Lincoln Green, Inc., Berryman, and Berryman's bonding company. Lincoln Green, Inc., responded by filing its third party complaint against the real estate agent Berryman as third party defendant.

The McCartys alleged that the agent Berryman had improperly identified the real property which he showed to the McCartys. It was alleged that Berryman showed the McCartys a lot designated as "Lot 31," and identified the lot to the McCartys as being the "south half of Lot 32." McCartys further claimed that when they executed the buy-sell agreement on the contract for deed for the purchase of the south half of Lot 32, they thought that they were in fact buying the real property which is Lot 31. Three months before McCartys had executed their contract, Lot 31 had been sold.

While the litigation was pending, and before trial in the District Court, Lincoln Green, Inc. and the McCartys entered into an agreement for settlement as to the litigation

-3-

between them. Lincoln Green, Inc. advised Berryman in advance of the proposed settlement, but Berryman declined to participate in the settlement in any form. The consideration for the settlement was $7,169.58. Lincoln Green, Inc. incurred attorney's fees of $2,200.00 in connection with the suit against it by the McCartys.

After trial between Lincoln Green, Inc. and Berryman, on the third party complaint, the District Court found that Berryman had a duty to his principal reasonably to establish the location of the parcel by geographical landmarks and that this duty existed particularly where the seller, Lincoln Green, Inc., did not have an existing relationship with the McCartys and did not participate in the showing of the parcel or the preparation of the buy-sell agreement except to the extent that Lincoln Green, Inc. prepared the documents of transfer.

The District Court concluded that Berryman was negligent in his scope as a broker salesperson in his failure properly to identify the parcel owned by Lincoln Green, Inc., and by misrepresenting the parcel to the McCartys, contrary to the duty a real estate agent owes to his principal as established by the standards accepted by the profession in the State of Montana.

Accordingly, judgment was entered by the District Court and this appeal followed.

We will consider together the first two issues raised by Berryman. Berryman contends that Lincoln Green, Inc. may not be held responsible to the McCartys unless Berryman himself was liable to the McCartys. Thus, he contends that Lincoln Green, Inc. may recover damages paid to the McCartys only if Lincoln Green, Inc. proves that Berryman was tortious

-4-

and that no defenses available to Berryman could relieve the agent from liability to the McCartys. Berryman then contends that the District Court erred in finding either that he was negligent or that there was a misrepresentation of property which gave rise to a legitimate claim against Lincoln Green, Inc.

Berryman's argument on this point is grounded on evidence that the real estate agent told McCartys at the time they went out that he wasn't sure of the exact location of the property and therefore, the McCartys assumed "any risk associated" in locating the correct parcel; and on paragraph 18 of the written contract whereby the McCartys disclaimed any reliance in entering into the contract upon anything other that their own examination and inspection of the premises.

Berryman relies on our recent case of Schulz v. Peake (1978), ____ Mont. ____, 583 P.2d 425, 35 St.Rep. 1295. In that case, the purchaser of a motel property sued for fraudulent misrepresentations in the sale, contending they were told that they were getting 13 acres in addition to the motel. A year after the purchase, the buyers discovered they had only 1.3 acres of land. The purchase agreement had in it a similar provision to paragraph 18 in this case, to the effect that the purchasers had conducted their own examination and were relying on that and not on any representation made to them by the sellers or the sellers' agents. This Court held that because of the contractual provisions, as well as the evidence that the purchasers had in fact inspected the property numerous times when the boundary lines were pointed out to them, and in none of the sales agreements was the figure "13 acres" included, the motel and the parcel containing 1.3 acres were properly described in the transfer agreements.

-5-

Schulz, supra, is distinguishable from the facts in the case at bar. Although the McCartys contracted that they had in fact inspected the premises and relied on their own inspection, it is also true that they had inspected the wrong property and that the inspection of the wrong property was brought about through the failure of the real estate agent properly to identify the property that he was showing to the prospective buyers.

Thus, in this case, Lincoln Green, Inc. incurred a liability to the McCartys because a seller is bound by mis-representations made by a real estate broker or agent as to the location of the property, or as to the particular lot or tract which was for sale. Blanke v. Miller (1954), 364 Mo. 797, 268 S.W.2d 809; Williams v. Ritcheson (Tex.Civ.App. 1948), 212 S.W.2d 813.

Under section 28-10-602, MCA, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrong-ful acts committed by such agent in and as a part of the transaction of such business.

Neither assumption of risk nor contributory negligence were pleaded as affirmative defenses. This Court will not pass on issues not raised in the District Court. Chadwick v. Gilberson (No. 80-7, Decided Oct. 8, 1980, 37 St.Rep. 1723)

Berryman next contends that the Court improperly concluded that he was negligent because there was no evidence before the District Court as to the standard of care ordinarily exercised by real estate agents in the community in like circumstances. In its conclusions of law, the District Court found that Berryman was negligent in failing properly

-6-

to identify the parcel to be sold, thereby misrepresenting the parcels of the purchasers "contrary to the duty a real estate agent owes to his principal as established by the standards accepted by the profession in the State of Montana."

The language in the conclusions respecting the standards accepted by the profession in Montana appears to be gratuitous, because no evidence of the standards was presented at the trial.

We find no error on this point. An agent is responsible to third parties as a principal, when his acts are wrongful in their nature. Section 28-10-702(3), MCA. No standard could be countenanced by the real estate brokers' profession, accepting as a reasonable standard of care the showing of the wrong property on behalf of a prospective seller to a prospective purchaser.

The last issue raised by Berryman relates to the damages awarded by the District Court. When the McCartys discovered that after making improvements upon the property which they thought was theirs, that the agreements described the wrong property, they did not seek rescission, but instead sued for damages. They sought not only actual damages, but punitive damages in a sum in excess of $107,660.00. The court found that Lincoln Green, Inc. and the McCartys entered into an arms-length negotiation whereby Lincoln Green, Inc., credited the unpaid balance on an existing contract for deed for the wrong parcel by the sum of $2,500.00; interest on the unpaid balance was forgiven in the sum of $2,108.08; and it obtained an access suitable to McCartys for the other property in the sum of $2,500.00. There was also the cost of $61.50 for a current title commitment and insurance policy, and Lincoln Green, Inc. incurred legal fees in the amount of $2,200.00 in the defense of the original litigation.

-7-

Berryman claims that in cases of a negligent misrepresentation, the measure of damages should be the difference in the value of the property received in the transaction and his purchase price or other value given for it, and the pecuniary loss suffered otherwise as a consequence of the misrepresentation, citing Restatement of Torts § 552(b). Here, Berryman claims there is no evidence offered to substantiate that there was a difference in value between the property actually received by the McCartys and what the McCartys actually paid for it.

The District Court decided the issues in favor of Lincoln Green, Inc., in this case, on tort liability of the agent. The measure of damages for tort liability is controlled by section 27-1-317, MCA. It provides:

> "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

It is the intent and purpose of our statutes, except for liquidated damages, agreed damages, or exemplary damages, that damages be compensatory and are properly awarded when they serve to compensate the plaintiff for the detriment proximately caused by the defendant. Lovely v. Burroughs Corporation (1974), 165 Mont. 209, 527 P.2d 557, appeal after remand, 169 Mont. 454, 548 P.2d 610. The damages awarded by the District Court here meet the statutory test of section 27-1-317, MCA, and were properly awarded.

Affirmed.

_____
                   John C. Sheehy
                      Justice

-8-

We Concur:

_Frank I. Haswell_
Chief Justice

---

_John Conway Harrison_
Justices

---

Mr. Justice Gene B. Daly dissenting:

I dissent.

The right to indemnity is an equitable principal based on the general theory that one compelled to pay for damages caused by another should be able to seek recovery from that party. May Trucking Co. v. International Harvester (1975), 97 Idaho 319, 543 P.2d 1159.

A suit for indemnification is generally allowed where, "the parties are not in pari delicto, and an injury results from the act of one party whose negligence is the primary, active and proximate cause of the injury, and another party, who is not negligent or whose negligence is remote, passive and secondary, is nevertheless exposed to liability by acts of the first party. . ." Great Northern Railway Co. v. United States (D. Mont. 1960), 187 F.Supp. 690, 693.

In its suit for idemnification respondent alleged, by way of a third party complaint, that appellant, due to his negligent misrepresentation to the McCartys, breached the standard of care established by the real estate profession. Respondent then went on to state that, as a result of this breach, appellant should indemnify respondent, as a third party plaintiff, for any sums due and owing the McCartys. In response to the third party complaint, appellant entered, by way of an answer, a specific denial to respondent's averments of negligence. Appellant, however, asserted no affirmative defenses or counterclaims to the suit.

To establish a right of indemnity, as set forth in its third party complaint, respondent must prove that appellant, due to his misstatements as to the property shown the McCartys, breached a standard of care established by the real estate profession and, thus, is liable for any sums due and owing resulting from the negligent misrepresentation. Respondent has failed in this regard; thus, it was not entitled to prevail on the suit for indemnification.

In support of his argument that respondent failed to establish any negligent behavior, appellant asserts that the testimony and evidence offered at trial reveals that the McCartys place no reliance upon the alleged misrepresentation as required to establish a cause of action for negligent or fraudulent misrepresentation.

As a basis for this contention, appellant makes note of the contract for deed between respondent and McCartys. Included in this contract is the following provision:

"18. Buyers acknowledge that they have examined and inspected the property and are fully familiar and acquainted therewith and that they are entering into this agreement based upon their own

examination and inspection, and that no repre-
sentations of any kind concerning the property
have been made by the Sellers or anyone acting
on behalf of the Sellers."

A similar contract provision was interpreted in Schulz
v. Peake (1978), ____ Mont. ____, 583 P.2d 425, 35 St.Rep.
1295. The Court in Schulz held that the language in such a
contract clause is clear and unambiguous and, thus, is to be
enforced as made by the parties. The Court then went on to
affirm the lower court's decision that the "complete investi-
gation" clause insulates the sellers from an allegation of
fraudulent representation.

Upon examining the contract provision and giving it
effect as made by the parties, it is clear and apparent that
the McCartys denied any reliance on any representations of
the seller or the seller's agent and entered into the agree-
ment based on their own examination and inspection. With
this being the case, the essential element of reliance upon
the seller's representations, needed to support a cause of
action for fraud or negligent misrepresentation, is eliminated.

Respondent contends that even if it is determined that
it was not liable to McCartys for representations made by
appellant, it is still entitled/indemnification for the
to
costs of the settlement. In support of this contention,
respondent cites Great Northern Railway Co., supra.

In Great Northern Railway Co. the plaintiff (indem-
nitee) had been sued by a business invitee who was injured
when struck by a mail pouch thrown by a United States Govern-
ment postal transportation clerk. The plaintiff settled the
action with the injured party and then initiated suit against
the United States Government for indemnity.

One of the issues on appeal in that case was whether the plaintiff is precluded from recovery for a payment, voluntarily made, in view of a finding that plaintiff's agent was not negligent. The court, in deciding the issue, stated that since the defendant had refused the tender of defense of the original action, plaintiff was justified in effecting a fair and reasonable settlement without resisting the litigation instituted by the injured party to the point of judgment. Great Northern Railway Co., 187 F.Supp. at 697.

Appellant contends that the present case involves a different factual situation and, thus, is distinguishable from Great Northern Railway Co. First of all, the court placed a great deal of reliance on the fact that the defendant (indemnitor) was given notice of the original suit yet refused to tender a defense. In the present case, respondent merely sued for indemnification by means of a third party complaint with no demand being made, or one refused, that appellant tender defense of the action brought by the McCartys. Furthermore, in Great Northern Railway Co., it was only the plaintiff's agent who was found not negligent; the defendant's agent's liability for the injuries still remained, thus, still entitling the injured third party to a recovery. Here, however, not only was respondent's liability eliminated by the contract provision entered into by McCartys, but appellant's liability to the parties as well.

Respondent also cites Washington Water Power Co. v. Morgan Electric Co. (1968), 152 Mont. 126, 448 P.2d 683, in support of its argument that it is entitled to indemnification in spite of liability. The Court in this case found that:

"Where, as here, the indemnitor and his insurer, after notice, refuse to defend the indemnitee; breach the indemnity agreement; refuse to participate in settlement negotiations or defend after demand; know the amount of the settlement and make no objections; the indemnitee is entitled to judgment as a matter of law in the amount of any settlement paid by it in good faith absent proof that the settlement is unreasonable." 448 P.2d at 689.

Appellant again would have this Court distinguish the case at issue in that here there is no indemnity agreement; no demand or refusal to tender a defense; and no prior notice of the settlement negotiations or allowance to participate therein. Furthermore, the defendant indemnitor in Washington Water Power Co. was specifically found to be negligent, which, based upon the lack of reliance on appellant's representations, is not the case in this instance.

In essence, appellant argues that prior to a proper indemnification for settlement costs the following elements must be present: (1) notice and refusal to tender a defense; (2) justification for seeking a settlement, with the appellant contending that said justification arises only when the indemnitee is exposed to actual liability (as opposed to mere potential liability); and (3) that the settlement be fair and reasonable. Appellant then argues that since respondent failed to give notice and demand a tender of defense and respondent failed to establish exposure to actual liability, it is not entitled to an indemnification for its settlement costs.

As to the requirement of notice, although there is authority to the contrary, as a general rule the liability of an indemnitor does not depend on the reception of a notice that indemnitee is subject to a suit for injuries caused by the indemnitor's negligent acts. 42 C.J.S.

Indemnity, §26 at 604. Even if notice would be a require-
ment, filing of a third party complaint by indemnitee seek-
ing recovery from indemnitor, such as occurred here, would
be sufficient.

As to justification of the settlement, the authorities
are divided on whether actual liability is required or
whether mere potential liability will suffice. See Block-
ston v. United States (D. Md. 1968), 278 F.Supp. 576, 586.
The majority of the courts hold, however, that when an
indemnitee seeks reimbursement from his indemnitor for a
payment made by him in discharge of a claim, he is not bound
to submit a suit to judgment before paying the claim; but,
if the indemnitee settles prior to judgment, as a condition
of recovery from his indemnitor, he is under the necessity
of proving he was actually liable for the amount paid.
United Boatbuilders, Inc. v. Tempo Products Co. (1969), 1
Wash.App. 177, 459 P.2d 958; Nelson v. Sponberg (1957), 51
Wash.2d 371, 318 P.2d 951; see also Ke-Wash Co. v. Stauffer
Chemical Co. (Iowa 1970), 177 N.W.2d 5; Williams v. Johnston
(1968), 92 Idaho 292, 442 P.2d 178; 42 C.J.S. Indemnity, §25
at 603-604.

The contract entered into between the parties, if it is
given effect by the Court, contains a clause that has been
held to insulate the seller and the seller's agent from a
claim of fraudulent or negligent misrepresentations. With
this being the case, respondent is unable to prove actual
liability on the part of appellant. Thus, respondent is not
entitled to an accrument of the right to indemnification for
settlement costs.

I acknowledge that the lower court determined that
appellant was liable for negligent misrepresentation. I

also note, however, that the trial court ignored appellant's argument that the contract for deed refutes the charges brought by eliminating an essential factor required to establish the cause of action.

It is a well-settled rule of law that the finder of fact will not be reversed on appeal unless the evidence clearly preponderates against the findings. Berdine v. Sanders County (1974), 164 Mont. 206, 520 P.2d 650. The findings in this case, however, are not supported by the evidence presented. Thus, the decision of the District Court should be reversed.

_____
Justice

In substance, I join in the dissent of Justice Daly.

_____
Justice

-15-